COLE v LADBROKE RACING MICHIGAN, INC

Docket No. 210975. Submitted January 6, 2000, at Detroit. Decided May 9, 2000, at 9:00 A.M. Leave to appeal sought.

Nathaniel Cole brought an action in the Wayne Circuit Court against Ladbroke Racing Michigan, Inc., doing business as Detroit Race Course - Ladbroke, seeking damages for injuries he suffered when the horse he was riding threw him. The plaintiff, a licensed exercise rider, was exercising a thoroughbred race horse at the state-licensed horse racing facility operated by the defendant when the horse, apparently spooked by a kite or piece of plastic in a tree near the track, bolted for the stables, jumped a fence, and threw the plaintiff to the ground, causing the plaintiff to suffer a back injury. The plaintiff claimed that the defendant was negligent in failing to make a reasonable inspection of the premises and in failing to provide competent outriders. The defendant moved for summary disposition on the basis that it owed no duty to protect the plaintiff from the ordinary risks of horse racing and on the basis of a release signed by the plaintiff in which he assumed the risks inherent in horse racing. The court, Amy Hathaway, J., denied the defendant's motion for summary disposition, ruling that the plaintiff's complaint stated a cause of action and that there were material questions of fact that required jury consideration. The court also found that the plaintiff had signed the release, but held that the release might be inapplicable and was not a total bar of the claims raised in the complaint. The defendant filed a second motion for summary disposition, claiming that the plaintiff's claims were barred by the provisions of the Equine Activity Liability Act (EALA), MCL 691.1691 et seq.; MSA 12.418(1) et seq. The plaintiff argued that the defendant waived any EALA immunity defense by failing to raise it in the defendant's first responsive pleading and, in any event, the EALA applied only to public riding stables and specifically excluded from its coverage "horse race meetings." The court, Dalton A. Roberson, J., without elaboration, denied the defendant's second motion for summary disposition. The defendant moved for reconsideration and filed an affidavit of a state representative who had sponsored the bill that became the EALA, in which it was asserted that the EALA was intended to protect a racetrack owner from liability for injuries suffered under the circumstances of this

case. The court granted the defendant's motion for reconsideration and entered an order dismissing the case. The plaintiff appealed from the order of dismissal entered on reconsideration of the defendant's second motion for summary disposition, and the defendant cross appealed from the denial of its first motion for summary disposition.

The Court of Appeals *held*:

1. The affirmative defense of statutory immunity is waived unless raised in a party's first responsive pleading or in a motion for summary disposition filed before the party's first responsive pleading. Because the defendant's assertion of the defense that it owed no duty to the plaintiff did not encompass the specific defense of immunity granted by law, ordinarily the immunity defense would be deemed to be waived. However, because at the hearing held to consider the defendant's second motion for summary disposition the trial court recognized that the defendant needed the court's permission to assert the immunity defense and nevertheless proceeded to hear the parties' arguments concerning the immunity defense, it is clear that the trial court constructively granted the defendant leave to amend its pleadings. Consequently, the question whether the EALA barred the plaintiff's claim was properly before the trial court and is now properly before the Court of Appeals.

2. Subsection 4(1) of the EALA, MCL 691.1664(1); MSA 12.418(4)(1), provides that the EALA "does not apply to a horse race meeting that is regulated by the racing law of 1980," MCL 421.61 *et seq.*; MSA 18.966 *et seq.* The EALA does not define the term "horse race meeting," but "meeting" is defined in 1985 AACS, R 431.1010(h), part of the administrative rules governing horse racing, as "the entire period of consecutive days" granted for the conduct of racing. A horse race meeting thus entails more than the actual race on the racetrack on race day and includes the activity of exercising a race horse at a track in preparation for a race. It is thus clear that the EALA does not apply under the circumstances of this case. Accordingly, the trial court should have denied the defendant's second motion for summary disposition.

3. Because the language of subsection 4(1) of the EALA is clear and unambiguous, there was no need for judicial interpretation and, thus, no need to consider the affidavit of the state representative.

4. In the release that he signed, the plaintiff acknowledged the dangerous conditions and inherent risks associated with the restricted areas of the premises and with the stabling, exercising, and training of the horses and voluntarily assumed "all risks of any injury" that he might sustain on the defendant's premises. The lan-

guage of the release was broad enough to bring the alleged negligent acts within the scope of the release. Accordingly, the trial court should have granted the defendant's first motion for summary disposition on the basis of the release.

Reversed.

1. PLEADING — AFFIRMATIVE DEFENSES — STATUTORY IMMUNITY — SUMMARY DISPOSITION.

The affirmative defense of statutory immunity is waived unless raised in a party's first responsive pleading or in a motion for summary disposition filed before the party's first responsive pleading (MCR 2.111[F], 2.116[D][2]).

2. NEGLIGENCE — EQUINE ACTIVITY LIABILITY ACT — HORSE RACING.

The provisions of the Equine Activity Liability Act do not apply with respect to injuries suffered by an exercise rider while exercising a race horse during a horse race meeting being held pursuant to the provisions of the racing law of 1980; the horse race meeting is the entire period of consecutive days granted for the conduct of racing (MCL 431.61 *et seq.*; 691.1664[1]; MSA 18.966(31) *et seq.*, 12.418[4][1]; 1985 AACS, R 431.1010[h]).

*Richard Dorman* and *Scott H. Gatti*, for the plaintiff.

*Dawda, Mann, Mulcahy & Sadler, P.L.C.* (by *Keith James, Gerald J. Gleesn, II*, and *Suanne Tiberio Trimmer*), for the defendant.

Before: KELLY, P.J., and DOCTOROFF and COLLINS, JJ.

KELLY, P.J. Plaintiff appeals as of right from the trial court's order of dismissal entered upon reconsideration of defendant's second motion for summary disposition based on immunity granted by § 4 of the Equine Activity Liability Act (EALA), MCL 691.1664; MSA 12.418(4). We reverse. Defendant cross appeals as of right the trial court's order denying its first motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). We reverse.

I

Plaintiff is a licensed exercise rider with more than twenty years experience riding thoroughbred horses. Defendant operates a state-licensed, pari-mutuel horse racing facility commonly known as Ladbroke DRC. On February 24, 1995, plaintiff sustained injury when the horse he was exercising was spooked by a kite or piece of plastic in a nearby tree, bolted for the stables, and threw plaintiff to the ground.

Plaintiff was running the horse around the track and, before reaching the finish line, he pulled up on the horse and turned toward the outside of the track. He had passed the gap, which is an opening in the outside rail around the track, and was approaching the pole when the horse became spooked and ran out of control along the outside of the track. Plaintiff yelled for an outrider, but no one responded. There was no attempt to close the gate at the gap. When the horse reached the gap, it made a sharp turn toward the stables, jumped a fence, and threw plaintiff to the ground. Plaintiff suffered a back injury as a result. After the accident, plaintiff observed the kite or other piece of plastic flapping in the tree.

On March 31, 1994, plaintiff signed an acknowledgment and assumption of risk form, which released defendant from liability for any and all injuries arising out of activities within the restricted area. The release stated, in pertinent part, as follows:

> The undersigned acknowledges that due to the unique combination of dangerous factors in the restricted area associated with the stabling, exercising and training of a large number of horses, and the presence of tradespeople, jockeys, owner and other personnel in the area, there are

inherent dangers in the restricted area which Ladbroke cannot eliminate after exercising reasonable care.

In acknowledgment of the dangerous conditions and inherent risks associated with the restricted area, the undersigned hereby voluntarily assumes all risks of any injury that the undersigned may sustain while on the premises of Ladbroke and hereby waives all liability against Ladbroke, its officers, employees and agents.

Plaintiff signed the release while he was pursuing opportunities as a jockey agent. Jockey agents generally do not exercise horses. He did not sign another release when he assumed the duties of an exercise rider.

Plaintiff filed this action, claiming negligence in that defendant failed to inspect the premises, which inspection would have revealed the kite, and that defendant failed to provide competent outriders at or near the gap. Defendant first sought summary disposition, claiming it owed no duty to protect plaintiff from the ordinary and ever present risks of horse racing. Defendant also relied on the release signed by plaintiff assuming the risks inherent in horse racing.

The trial court was satisfied that, in fact, plaintiff did sign a release, but held that "it was for reasons other than what he was functioning on at the day of the incident." The trial court noted that the release may have been inapplicable and that it was not a total bar of the claims raised in the complaint. The court also ruled that plaintiff's complaint stated a cause of action and that there were material questions of fact for the jury to decide.

Defendant filed a second motion for summary disposition claiming that the EALA barred plaintiff's claims. Plaintiff responded that the EALA specifically

excluded "horse race meetings" from its coverage, that it applied only to public riding stables, and that defendant was governed by the Racing Law of 1980, MCL 431.61 *et seq.*; MSA 18.966(31) *et seq.* Plaintiff also argued that defendant had waived the EALA immunity defense because it failed to raise it in its first responsive pleading as required by MCR 2.116(D)(2).

Without elaboration, the court denied defendant's motion. Defendant sought reconsideration and, in support of its motion, filed the affidavit of State Representative John T. Llewellyn, who had sponsored the bill that became the EALA. Rep. Llewellyn stated that the EALA was intended to coexist with the Racing Law of 1980 and was not intended to preempt the law. He also stated that the phrase "equine activity sponsor" was broadly defined to include defendant and that the EALA was meant to protect a racetrack owner from liability for injuries suffered by an exercise rider while exercising a horse belonging to a third party. The court granted defendant's motion for reconsideration and entered an order dismissing the case on March 31, 1998.

II

This Court reviews an order granting or denying summary disposition de novo as a question of law. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Immunity granted by law is covered by MCR 2.116(C)(7).[1] This Court reviews all

---

[1] Defendant's second motion for summary disposition was filed under MCR 2.116(C)(10). Defendant's motion for reconsideration sought dismissal under MCR 2.116(C)(7) and (C)(10). The difference between a motion

the affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construes the pleadings in favor of the nonmoving party. A motion brought pursuant to MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. *Amburgey v Sauder*, 238 Mich App 228, 231; 605 NW2d 84 (1999).

A motion under MCR 2.116(C)(10) must be supported by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b). The adverse party may not rest on mere allegations or denials of a pleading, but must, by affidavits or other appropriate means, set forth specific facts to show that there is a genuine issue for trial. MCR 2.116(G)(4). All this supporting and opposing material must be considered by the court. MCR 2.116(G)(5).

This Court also reviews de novo questions of law involving statutory interpretation. *Michigan Municipal Liability & Property Pool v Muskegon Co Bd of Co Rd Comm'rs*, 235 Mich App 183, 189-190; 597 NW2d 187 (1999), citing *Watson v Bureau of State Lottery*, 224 Mich App 639, 644; 569 NW2d 878 (1997). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent and purpose of the Legislature. *Id.* The first criterion in determining intent is the specific language of the statute.

---

under MCR 2.116(C)(7) and a motion under MCR 2.116(C)(10) is that a movant under MCR 2.116(C)(7) is not required to file supportive material, and the party opposing the motion is not required to respond in kind. Moreover, the contents of the complaint must be accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant. *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994). Summary disposition would have been appropriate under either subrule.

*DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Unless defined in the statute, every word or phrase of a statute should be understood according to the common and approved usage of the language, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 621; 552 NW2d 657 (1996). If statutory language is clear, judicial construction is normally neither necessary nor permitted, and the statute must be enforced as it is written. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992).

The grant or denial of a motion for reconsideration is a matter within the discretion of the trial court. *In re Beglinger Trust*, 221 Mich App 273, 279; 561 NW2d 130 (1997).

A

We first address whether defendant waived the affirmative defense of statutory immunity by failing to raise it in its first responsive pleading. MCR 2.116(D)(2) states that when a motion for summary disposition is based on immunity granted by law, that ground must be raised in a party's responsive pleading, unless the grounds are stated in a motion for summary disposition filed before the party's first responsive pleading. A party waives an affirmative defense unless the defense is set forth in its first responsive pleading. MCR 2.111(F); *Kelly-Nevils v Detroit Receiving Hosp*, 207 Mich App 410, 420; 526 NW2d 15 (1994).

Although defendant claimed to have raised immunity granted by law in its first responsive pleading, we

hold it did not. Defendant simply asserted the defense that it owed no legal duty to plaintiff. "An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Stanke v State Farm Mut Automobile Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993), citing *Campbell v St John Hosp*, 434 Mich 608, 616; 455 NW2d 695 (1990). "In other words, it is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Stanke, supra* at 312. The general allegation of "no legal duty" is a denial of an element of plaintiff's prima facie case and does not encompass the specific defense of "immunity granted by law," which is a defense that goes beyond rebutting the plaintiff's prima facie case.

Ordinarily, we would deem the immunity defense waived. However, at the hearing concerning defendant's second motion for summary disposition, the trial court recognized that defendant needed the court's permission to assert the affirmative defense, and then stated, "Let's go ahead." The trial court proceeded to hear the parties' arguments regarding the immunity issue and rendered its ruling based on immunity.

The grant or denial of leave to amend is within the trial court's discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). A motion to amend ordinarily should be granted in the absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973). If a trial court denies a motion to amend, it should specifically state on the record the reasons for its decision. *Id.* at 656-657.

Although no motion to amend was filed until after the court ruled, it is clear to this Court that the trial court constructively granted leave to amend by allowing argument and, ultimately, dismissing the action based on the EALA. Because plaintiff briefed the issue and was afforded an opportunity for oral argument in response to defendant's second motion for summary disposition, we find no prejudice.

Defendant thereafter filed a motion for leave to amend its affirmative defenses to add the defense of immunity granted by the EALA. Defendant filed its motion after the claim of appeal was filed in this matter and relied on MCR 7.208 as the basis for granting leave. The trial court, without elaborating, denied defendant's motion. Even though a trial court should specifically state on the record the reasons for its decision to deny leave to amend, *Ben P Fyke & Son*, *supra* at 656-657, under the circumstances of this case, we find no error. Consequently, the issue of immunity granted by law is properly before this Court.

B

Next we consider whether the immunity granted by the EALA applies to defendant. The EALA contains the following provision:

> This act does not apply to a horse race meeting that is regulated by the racing law of 1980, Act No. 327 of the Public Laws of 1980, being sections 431.61 to 431.88 of the Michigan Compiled Laws. [MCL 691.1664(1); MSA 12.418(4)(1).]

The EALA does not define "horse race meeting" and no reported Michigan decision has addressed the issue whether the immunity granted by the EALA extends to professional racetrack facilities like defendant. "Meeting" is defined by the administrative rules governing horse racing as "the entire period of consecutive days which is granted by the commissioner to an association for the conduct of racing." 1985 AACS, R 431.1010(h). "Recognized meeting" means "any race meet with regularly scheduled races which is licensed by, and conducted under rules promulgated by, a governmental regulatory body, including race meets in foreign countries held under the sanction of a turf authority whose jurisdiction is acknowledged by the commissioner." 1985 AACS, R 431.1020(d). Similarly, "time of a race meeting" is defined as "the whole consecutive period of days for which a license is granted by the commissioner." 1985 AACS, R 431.1025(a). A race meeting generally covers several days and may even take place on different tracks. In addition, activities regulated in conjunction with race meetings can take place away from the track, such as at the trainer's stables. Thus, a race meeting entails much more than the actual race on the racetrack on race day. Applying these definitions, we believe the activity of exercising a race horse at a track in preparation for a race is included in the EALA's definition of "horse race meeting."

The legislative history shows that the purpose behind the EALA was to protect commercial riding stables from claims for damages resulting from the inherent risks of horseback riding and being around horses. The EALA's definition of "inherent risk of an equine activity" includes a horse's reaction to an unfamiliar object, such as a kite in a tree. MCL 691.1662; MSA 12.418(2); *Amburgey*, *supra* at 237. Nevertheless, we hold that the immunity granted by the EALA does not extend to defendant. The language of the EALA is clear and unambiguous: it does not apply to horse race meetings. The trial court should have applied the statute as written and denied defendant's second motion for summary disposition. *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 392; 594 NW2d 81 (1999).

C

Because we deem the statute to be clear and unambiguous, there was no room for judicial interpretation, and the trial court erred in considering the affidavit of Rep. Llewellyn. *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). As Justice Scalia has stated, "the views of a legislator concerning a statute already enacted are entitled to no more weight than the views of a judge concerning a statute not yet passed." *Sullivan v Finkelstein*, 496 US 617, 632; 110 S Ct 2658; 110 L Ed 2d 563 (1990). Likewise, the Sixth Circuit Court of Appeals has noted that " 'post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent . . . expressed before the Act's passage,' " because such statements " ' "represent only the personal views of these legislators." ' " *Michigan United Conservation*

*Clubs v Lujan*, 949 F2d 202, 209 (CA 6, 1991), quoting *Regional Rail Reorganization Act Cases*, 419 US 102, 132; 95 S Ct 335; 42 L Ed 2d 320 (1974). The affidavit of Rep. Llewellyn was supported by neither the plain language nor the legislative history of the act.

III

Though we rule that defendant was not entitled to summary disposition under the EALA, we find that the acknowledgment and assumption of risk form signed by plaintiff barred this action, including plaintiff's negligence claims.[2]

A claim may be barred because of a release. MCR 2.116(C)(7). The trial court recognized that a valid release had been executed by plaintiff, but ruled it inapplicable to plaintiff's negligence claims. The interpretation of the release was a question of law for the court to decide. *Patterson v Kleiman*, 447 Mich 429, 433-435; 526 NW2d 879 (1994).

The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Rinke v Automotive Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344

---

[2] Defendant has provided this Court with several foreign decisions addressing the doctrine of the assumption of risk defense in cases where a jockey was injured while racing or exercising a horse. Although instructive, these cases are not persuasive because the doctrine has been abandoned in Michigan in all but two types of cases: those involving employer/employee relationships and cases involving express contractual assumption of risk, such as presented here. *Felgner v Anderson*, 375 Mich 23, 54-56; 133 NW2d 136 (1965).

(1997). The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996).

The release covered "all risks of any injury that the undersigned may sustain while on the premises." As this Court has held, "there is no broader classification than the word 'all.'" *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994). The release clearly expressed defendant's intention to disclaim liability for all injuries, including those attributable to its own negligence. *Gara v Woodbridge Tavern*, 224 Mich App 63, 67; 568 NW2d 138 (1997), citing *Skotak, supra* at 619, and *Dombrowski v Omer*, 199 Mich App 705, 711-712; 502 NW2d 707 (1993). The release specifically addressed the dangerous conditions and inherent dangers in the restricted area of the racetrack. The phrase "which Ladbroke cannot eliminate after exercising reasonable care" is not a limit on the scope of the release, but, rather, is an unambiguous emphasis of the fact that being in the restricted area entails dangers that cannot be eliminated by exercising reasonable care.

As the Illinois Supreme Court has stated in regards to the sport of professional auto racing,

> [A] myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated

the similarly broad range of accidents which occur in auto racing. [*Schlessman v Henson*, 83 Ill 2d 82, 86; 46 Ill Dec 139; 413 NE2d 1252 (1980).]

Here, the parties may not have anticipated that a kite would land in a tree near the track and that the horse would become spooked by the kite. However, the unpredictability of a horse's reaction to a kite in a tree, or any other unfamiliar object, was undoubtedly an inherent and foreseeable risk contemplated by the broad language of the release.

Likewise, the likelihood of an outrider not being in a position to attempt to intercept a runaway horse was also a foreseeable and inherent risk covered by the broad language of the release. See *Maness v Santa Fe Park Enterprises, Inc*, 298 Ill App 3d 1014; 233 Ill Dec 93; 700 NE2d 194 (1998) (stock car driver died of heart attack after being involved in accident and track owner failed to provide prompt medical attention), and *Zavras v Capeway Rovers Motorcycle Club, Inc*, 44 Mass App 17; 687 NE2d 1263 (1997) (dirt bike rider suffered injuries when a flagman failed to warn of an obstruction on the racetrack). Although plaintiff arguably expected an outrider to be present,[3] the injury allegedly suffered as a result of no outriders being on the track was contemplated by the broad exculpatory language of the release.

The scope of the applicability of the release is clear: it released defendant from liability with respect to *any* injury suffered by the plaintiff while on defendant's premises regardless of whether he was present

---

[3] The agreement between Ladbroke and The Michigan Division of the Horsemen's Benevolent and Protective Association, Inc., stated, "An outrider shall be provided by Ladbroke during training hours."

as a jockey agent or as an exercise rider. The release enumerated several activities associated with the restricted area, including exercising horses, and was not limited to the activities of any particular class of signatory. Moreover, plaintiff has not provided this Court with any convincing evidence that the release he signed on March 31, 1994, was to be effective only for the 1994 race season.

In light of our ruling, we find it unnecessary to address the remaining issues raised on appeal and cross appeal.

The trial court's order granting reconsideration and dismissing plaintiff's action based on immunity granted by the EALA is reversed. The trial court's order denying defendant's motion for summary disposition based on the release is also reversed. No costs to either party, a public question being determinative.