NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0239n.06
Filed: April 2, 2007

No. 06-1363

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PAMELA JOHNSON,                        )
                                       )
    Plaintiff-Appellant,               )
                                       )
v.                                     )     ON APPEAL FROM THE UNITED
                                       )     STATES DISTRICT COURT FOR
                                       )     THE EASTERN DISTRICT OF
DOROTHY FLOWERS and ANGIE JENERETTE,   )     MICHIGAN
                                       )
    Defendants-Appellees.              )

Before: SILER, MOORE, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Pamela Johnson appeals the district court's grant of summary judgment in favor of defendants Dorothy Flowers and Angie Jenerette. The district court held that a settlement agreement between Johnson and the Family Independence Agency (FIA) contained a release clause that barred her suit against Flowers and Jenerette because they were her supervisors at the FIA. The district court further held that Johnson's claims were barred by the doctrines of equitable and judicial estoppel. We **AFFIRM** on the ground that the settlement agreement precludes Johnson's claims.

## I. BACKGROUND

Johnson is an African-American woman who was employed by the FIA, a Michigan agency. She worked as a Program Manager for the Monroe FIA from 1997 until 2003. Flowers and Jenerette were Johnson's supervisors. Both are African-American females. Johnson alleges that Flowers and

Jenerette instituted discriminatory practices toward white employees at FIA, gave preferential treatment to African-American employees, and created an overall hostile work environment toward white employees. After Johnson challenged these alleged discriminatory policies, she contends that she was harassed by and suffered retaliation from Flowers and Jenerette. According to Johnson, Flowers and Jenerette demoted her from a management position and transferred her to Ann Arbor, Michigan, and then to Lansing, Michigan, knowing that she lived in Toledo, Ohio. These transfers would have significantly increased Johnson's daily commute time. Further, Johnson claims that this was a retaliatory transfer made despite the availability of a similar position in the Monroe office where she was then employed.

In July 2003, Johnson filed a union grievance challenging her demotion and transfer. In October 2003, she filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights (MDCR) stating that she believed she was demoted "based on race and sex."

In February 2004, Johnson reached a settlement agreement with the FIA concerning her grievance. The release, in pertinent part, stated:

> The following constitutes a complete, final, and binding agreement and resolves this grievance between the Grievant and the Michigan Family Independence Agency, and its agents relative to this matter.
>
> 1. The agency agrees to rescind Ms. Johnson's disciplinary demotion of August 4, 2003 and return her to her former classification as a Social Services Programmer 14.
>
> 2. Any record of the demotion will be purged from Ms. Johnson's employment history and personnel file.

3.  Ms. Johnson will be reassigned to Oakland County and the FIA Peer Review Team as a Social Services Programmer 14 effective March 8, 2004.

4.  Ms. Johnson will be made whole for wages from August 4, 2003 through March 8, 2004.

5.  Ms. Johnson releases the FIA in connection with any and all claims that she may have against any of the foregoing, including but not limited to grievances, appeals, lawsuits, claims, arising under the state and federal civil rights act, including the Elliott-Larsen Civil Rights Act, claims for personal injury, pain and suffering, or any other claim that she currently has.

6.  This settlement constitutes full and complete resolution to this issue and all complaints and demands relative to this matter that the union may have against the department or its agents, and is non-precedent setting.

In July 2004, the FIA transferred the Peer Review staff, of which Johnson was a member, to the Office of the Children's Services. Johnson maintains that she suffered numerous adverse employment actions as a result of this transfer, including loss of income, an increased daily commute, and loss of a state vehicle. After she requested to be reassigned to Monroe, Lenawee, or Washtenaw County, the FIA informed her that there were no positions available. In August 2004, Johnson requested a level 15 position, one level above her then current position, in Washtenaw County, but she received no response. Later that August, the FIA transferred her to its Adrian office. Johnson claims the FIA gave her no phone and very little work following this transfer. In September 2004, the EEOC informed Johnson that it was closing its file on her charges of discrimination because it had accepted the findings of the MDCR, which had dismissed her claims. In December

2004, Johnson interviewed for Director of the Monroe FIA office, but she did not receive the promotion.

Johnson then filed a claim in the state circuit court in January 2005 against Flowers and Jenerette. She alleged a violation of her First Amendment rights, retaliation under 42 U.S.C. §§ 1981 and 1983, and retaliation under Michigan's Elliott-Larsen Civil Rights Act. Flowers and Jenerette removed the case to federal court and the district court later granted summary judgment in their favor.

## II. DISCUSSION

"This Court reviews a grant of summary judgment *de novo* using the same legal standard employed by the district court. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wojcik v. City of Romulus*, 257 F.3d 600, 608 (6th Cir. 2001) (citations and quotations omitted). The parties agree that Michigan law governs.

Johnson argues that the settlement agreement releases only the FIA from future claims, but that it does not release any of the FIA's agents. She maintains that only one section of the settlement agreement, Paragraph 5, imposes any obligation on her, and that the initial paragraph places no obligation on her. Thus, in her view, because Paragraph 5 only mentions the FIA – not its agents – the settlement agreement does not prevent her from raising claims against Flowers and Jenerette.

To bolster this argument, Johnson points to Paragraph 6. This paragraph specifically mentions the FIA's agents whereas the preceding paragraph does not. Johnson contends that had the

parties intended the FIA's agents to be included in Paragraph 5, they would have specifically

mentioned them as they did in Paragraph 6.

> The scope of a release, like any contract, depends on ascertaining the intent of the parties at the time of signing the release. The dispositive inquiry is "what did the parties intend?" Intent is determined by reviewing the language of the entire instrument and all surrounding facts and circumstances under which the parties acted in light of the applicable law as to employment discrimination at the time. It is necessary to examine all the circumstances surrounding the formation of the release.

*Adams v. Philip Morris, Inc.*, 67 F.3d 580, 585 (6th Cir.1995).

The district court correctly interpreted Paragraphs 5 and 6 of the release when it found:

"Although Paragraph 5 does not include the phrase 'and its agents,' it does state that [Johnson]

'releases the FIA in connection with any and all claims that she may have against *any of the*

*foregoing*. . . .'" Because Paragraph 5 is a subparagraph to the overarching initial paragraph it is

reasonable to assume the parties intended to include the FIA's agents in the "foregoing" category.

As the district court held, any other interpretation would render the initial paragraph "meaningless."

Further, Paragraph 6 helps to establish that the parties were thinking in terms of a complete release

agreement where both the FIA and its agents would be released from future claims. Specifically,

Paragraph 6 states that "[t]his settlement constitutes full and complete resolution to this issue."

More importantly, the parties' agreement is unambiguous. "If the text in the release is

unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the

language of the release. A contract is ambiguous only if its language is reasonably susceptible to

more than one interpretation. The fact that the parties dispute the meaning of a release does not, in

itself, establish ambiguity." *Cole v. Ladbroke Racing Mich. Inc.*, 614 N.W.2d 169, 176 (Mich Ct. App. 2000).

The initial paragraph states that the release was intended to be "a complete, final, and binding agreement and resolves this grievance between the Grievant and the Michigan Family Independence Agency, and its agents relative to this matter." The language of the entire instrument should be considered to determine the parties' intent at the time the agreement was reached. *Adams*, 67 F.3d at 585. The initial paragraph of the agreement clearly and unambiguously released the FIA *and its agents* from all liability related to this matter. That would include Flowers and Jenerette; thus, Johnson's claims are barred.

Because the settlement agreement precludes Johnson's claims, we need not reach the estoppel issues.

**AFFIRMED**.