*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELENA N. BETTS-WATKINS,

Plaintiff-Appellant,

v

ARLYN J. BOSSENBROOK and LAW OFFICES
OF ARLYN J. BOSSENBROOK, PC,

Defendants-Appellees.

UNPUBLISHED
October 20, 2022

No. 358730
Ingham Circuit Court
LC No. 20-000699-NM

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In this action alleging legal malpractice and breach of fiduciary duty against defendant Arlyn J. Bossenbrook and his law firm, plaintiff appeals by right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(7) (prior release). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2003, plaintiff and DuWayne Watkins executed a prenuptial agreement (the 2003 Agreement)[1] and were married. The 2003 Agreement provided in relevant part that the marital home would pass to the surviving spouse and that plaintiff would additionally receive assets equal to 20 percent of the gross estate upon DuWayne's death. These assets would be transferred to plaintiff from DuWayne's trust.

Plaintiff alleged that, beginning in December 2010, Bossenbrook facilitated DuWayne's efforts to "dissolve the contractual terms" of the 2003 Agreement and to modify the terms of that

---

[1] When reviewing a motion for summary disposition under MCR 2.116(C)(7), the "contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Thus, for purposes of this appeal, we accept as true the allegations in plaintiff's first amended complaint unless stated otherwise.

agreement through execution of a new agreement (the 2010 Agreement) to plaintiff's detriment. Bossenbrook and DuWayne also created a "new Trust" (the Trust), and plaintiff claimed that Bossenbrook failed to inform her about the contents of the Trust or the 2010 Agreement's changes to the 2003 Agreement. Plaintiff alleged that she was told to sign the 2010 Agreement without any explanation from Bossenbrook as to what the agreement contained and without being given an opportunity to seek the advice of independent counsel. According to plaintiff's complaint, she is not a native speaker of the English language. The 2010 Agreement allegedly had a negative effect on plaintiff's interests in both the marital home and DuWayne's assets.

DuWayne died in 2015, and Bossenbrook nominated himself to serve as both the Trust's trustee and the trustee's attorney. Plaintiff was still married to DeWayne at the time of his death. Plaintiff claimed that Bossenbrook created conflicts of interest, and violated the terms of the Trust, by naming plaintiff to be "Trust Protector" and advising her in this role. According to plaintiff, Bossenbrook did this to obtain her "unwitting participation in his mismanagement of the Trust."

Further, Bossenbrook also established an attorney-client relationship with plaintiff in her personal capacity in 2016, and Bossenbrook created an estate plan for plaintiff. According to plaintiff, this raised numerous conflicts of interest arising from Bossenbrook's role in the 2010 Agreement and in the creation of the Trust, as well as his multiple roles in relation to the administration of the Trust. Plaintiff complained that Bossenbrook's failure to disclose his conflicts of interests impaired her rights over the marital home and Trust assets. In 2017, Bossenbrook transferred the marital home to the trust. He also allegedly advised plaintiff at some point that she only held a life estate in the marital home. In 2019, Bossenbrook completed additional modifications to plaintiff's estate plan.

Litigation ensued in the Ingham County Probate Court generally involving Bossenbrook's alleged mismanagement of the Trust, Bossenbrook's various alleged conflicts of interest, a legal malpractice claim alleged against Bossenbrook by alleged trust beneficiary Elizabeth Watkins, a claim that Bossenbrook breached his fiduciary duty to Elizabeth, and a petition to remove Bossenbrook as trustee. Bossenbrook, plaintiff, and other purported beneficiaries of the Trust were involved in the probate court litigation.

The probate court litigation was resolved by a settlement agreement and release dated October 2, 2020 and approved by the probate court on November 13, 2020 (the Settlement). Plaintiff, Bossenbrook, the Trust, and Elizabeth were all parties to the Settlement. Under the Settlement, plaintiff would receive title to the marital home and the Trust would pay $45,000 to plaintiff's attorney, Nancy Little, for attorney fees and costs incurred by plaintiff.

Paragraphs 5-7 of the Settlement provided:

Full and Final Settlement. This agreement is made and performed in full and final settlement and compromise of all disputes and controversies between and among the Parties, including all claims, counterclaims, cross-claims and Issues, known and unknown, both legal and factual relating to the Proceeding and Issues and the events, transactions and occurrences involved in the Proceeding and Issues. There are no other agreements between the Parties with respect to the settlement of these

Issues, disputes, controversies and claims.  This Agreement shall serve as a bar in the nature of both res judicata and collateral estoppel to the raising of any claim or Issue actually raised in the Proceeding and any claim or Issue that could have been raised in the Proceeding, including any claims for costs or attorney fees or sanctions by any Party against any other Party relating in any way to the Issues, events, transactions and occurrences involved in the Proceeding.

Mutual Release.  The Parties have released and discharged each other, and by these presents do for themselves and their respective successors, heirs, assigns, executors, administrators, directors, officers, employees, agents, attorneys and all those claiming through or under them, release, acquit and forever discharge each other and all their respective heirs, successors, assigns, executors, administrators, directors, officers, employees; agents, attorneys and all those claiming under or through them from any and all actions, causes of action, claims, liabilities, debts, contracts, sums arising, damages, administrative claims and complaints, grievances, sanctions and any other thing whatsoever on account of or in any way arising from the Issues or the Proceeding, including, but not limited to, the subject matter of this Agreement, the Issues, events, transactions and occurrences involved in the Proceeding, the Issues and matters related thereto, all matters asserted in the Proceeding, and all matters that could have been asserted in the Proceeding.  The consideration recited is accepted by each Party in full compromise, settlement, satisfaction, release and discharge of any liability of any of the above-named persons to each other arising as stated above.  Each of the parties to this agreement understands that this Agreement is the compromise of doubtful and disputed claims between them, and that the payment under this agreement is not to be construed as an admission of liability, which is expressly denied by each.  This Agreement is being entered into solely to avoid the financial and emotional burden of continued litigation.

Lawsuits and Proceedings Forever Barred.  It is the intention of the Parties and it is understood by each of the Parties hereto that this Agreement will and does hereby forever and for all time bar any action, claim, proceeding or administrative proceeding whatsoever by the Parties which arose, in whole or in part or which might arise in the future with respect to the Proceeding and/or the Issues, events, transactions and occurrences involved in the Proceeding.

Additionally, the Settlement defined the term "Proceeding" to mean the probate court action involving the Trust.  The Settlement further stated, "As used herein the term 'Issues' means all issues and controversies regarding the Trust, the Trust's assets; the receipts, disbursement, gains and losses of the Trust; and all other issues surrounding the administration of the Trust for all time, from time immemorial."  Plaintiff was not represented by defendants at this point but instead had her own independent counsel.

Plaintiff subsequently initiated the instant action in the Ingham Circuit Court on December 10, 2020.  A first amended complaint was filed on January 25, 2021.  Plaintiff asserted claims

against defendants for legal malpractice and breach of fiduciary duty.[2] In Count I, plaintiff alleged that defendants committed malpractice by (1) failing to inform her of Bossenbrook's conflicts of interest (stemming from Bossenbrook's 2010 actions and representation on behalf of DuWayne) when Bossenbrook established an attorney-client relationship with plaintiff in 2016, (2) failing to advise plaintiff in 2016 of the deficiencies and invalidity of the 2010 documents drafted by Bossenbrook, (3) failing to advise plaintiff to secure independent counsel at the beginning of the Trust litigation in the probate court, (4) forcing plaintiff to incur attorney expenses to defend herself in the probate court litigation, (5) drafting "deficiencies" in the 2016 estate planning documents drafted for plaintiff that failed to account for plaintiff's specific circumstances that included her rights under the Trust, and (6) drafting "deficiencies" in the 2019 estate planning documents drafted for plaintiff that seemingly involve alleged instances of "poor" and confusing draftsmanship regarding the operation of plaintiff's separate trust.

Plaintiff claimed that Bossenbrook's negligence caused her to incur damages, specifically the loss of fee simple ownership interests in the marital home for a period of years, the loss of her right to 20 percent of DuWayne's remaining assets, fees and costs incurred in the probate court litigation, being forced to compromise with other Trust claimants in order to recover fee ownership of the marital home, fees paid to Bossenbrook as trustee of the Trust and attorney for the trustee, estate planning fees, and various forms of mental pain and suffering.

In Count II, plaintiff alleged that Bossenbrook breached the fiduciary duty owed to plaintiff, specifically through his failure to disclose to her his various conflicts of interest, failing to disclose how the 2010 Agreement modified the 2003 Agreement to plaintiff's detriment and that plaintiff could challenge the validity of the 2010 Agreement, his serving both as trustee of the Trust and attorney for the trustee, his improper appointment of her as Trust Protector, and his failure to address plaintiff's language issues by securing an interpreter. Plaintiff alleged that she had suffered mental anguish and emotional distress as well as financial loss and difficulties through Bossenbrook's administration of the Trust.

Rather than file an answer, defendants filed their motion for summary disposition under MCR 2.116(C)(7), arguing that the Settlement was comprehensive and clearly barred plaintiff's claims. Plaintiff countered that her claims against Bossenbrook were based on Bossenbrook's handling of plaintiff's own estate plan, which was independent from matters involving the Trust and its administration, and that the probate court could not have heard the claims now raised by plaintiff because they were outside the limited subject-matter jurisdiction of the probate court. Plaintiff asserted that the Settlement was limited in scope to matters that were raised or could have been raised in the probate court as part of the Trust litigation.

The trial court granted defendants' motion. The court reasoned that plaintiff's claims arose from the administration of the trust, and therefore could have been raised in the probate litigation and were now barred by the Settlement, because plaintiff's claimed damages pertained to the

---

[2] Plaintiff's theory of liability against defendant Law Offices of Arlyn J. Bossenbrook was solely based on respondeat superior.

-4-

marital home and other assets of the Trust. The trial court denied plaintiff's motion for reconsideration. Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (citations omitted). Relevant to this appeal, summary disposition is properly granted pursuant to MCR 2.116(C)(7) when there has been a prior release or judgment warranting dismissal of the action. MCR 2.116(C)(7). When a motion is based on Subrule (C)(7), a court must consider the "affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties." MCR 2.116(G)(5). The pleadings and evidence are construed in favor of the nonmoving party. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). "The interpretation of the release [is] a question of law for the court to decide." *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000).

## III. ANALYSIS

Plaintiff first argues that the trial court's summary disposition ruling was erroneous because plaintiff's claims are outside the scope of the Settlement. Plaintiff maintains that the Settlement only pertains to matters directly involving the Trust and her claims are based on Bossenbrook's involvement with plaintiff's separate, personal estate planning.

As this Court has explained:

> The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. [*Id*. at 13-14 (citation omitted).]

Here, plaintiff and Bossenbrook were parties to the Settlement, which specifically stated that "[t]his agreement is made and performed in full and final settlement and compromise of *all disputes and controversies between and among the Parties*, including *all* claims, counterclaims, cross-claims and Issues, *known and unknown*, both legal and factual relating to the Proceeding and Issues and the events, transactions and occurrences involved in the Proceeding and Issues." (Emphasis added.) "[T]here is no broader classification than the word 'all.' " *Cole*, 241 Mich App at 14 (citation and some quotation marks omitted).

Additionally, the mutual release language within the Settlement provided:

> *The Parties have released and discharged each other*, and by these presents do for themselves and their respective successors, heirs, assigns, executors, administrators, directors, officers, employees, agents, attorneys and all those claiming through or under them, release, acquit and forever discharge each other and all their respective heirs, successors, assigns, executors, administrators,

-5-

directors, officers, employees; agents, attorneys and all those claiming under or through them *from any and all actions, causes of action, claims, liabilities, debts, contracts, sums arising, damages, administrative claims and complaints, grievances, sanctions and any other thing whatsoever on account of or in any way arising from the Issues or the Proceeding*, including, but not limited to, the subject matter of this Agreement, the Issues, events, transactions and occurrences involved in the Proceeding, the Issues and matters related thereto, all matters asserted in the Proceeding, and all matters that could have been asserted in the Proceeding. The consideration recited is accepted by each Party in full compromise, settlement, satisfaction, release and discharge of any liability of any of the above-named persons to each other arising as stated above. Each of the parties to this agreement understands that this Agreement is the compromise of doubtful and disputed claims between them, and that the payment under this agreement is not to be construed as an admission of liability, which is expressly denied by each. This Agreement is being entered into solely to avoid the financial and emotional burden of continued litigation. [Emphasis added.]

Furthermore, the Settlement provided:

It is the intention of the Parties and it is understood by each of the Parties hereto that *this Agreement will and does hereby forever and for all time bar any action, claim, proceeding or administrative proceeding whatsoever* by the Parties which arose, in whole or in part or which might arise in the future with respect to the Proceeding and/or the Issues, events, transactions and occurrences involved in the Proceeding. [Emphasis added.]

This language unambiguously provides for a broad settlement of potential claims between the parties, both "known and unknown." Moreover, although plaintiff contends that her estate planning was distinct from her deceased husband's trust, it is evident from the degree of entanglement between Bossenbrook's conduct and matters pertaining to plaintiff as both a beneficiary of DuWayne's estate and client with respect to her own estate planning, all of which relate to the conflicts of interest plaintiff alleged were created by Bossenbrook, that plaintiff's estate planning matters were at least "relat[ed]" to the matters involved in the probate court litigation involving the Trust.

Contrary to plaintiff's argument, the scope of this settlement language is not limited only to matters actually involved in the probate court proceedings or that could have been brought in the probate court as part of those trust proceedings. Such matters are expressly *included* within the scope of the settlement and release language, but there is no language limiting the scope of the release in the manner proposed by plaintiff. Instead, it is evident from the broad language of the settlement and release that the parties intended there to be a release of *all* potential claims between the parties, known and unknown, wherever those claims could be asserted. *Cole*, 241 Mich App at 13-14.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron