*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROY MAKSYM and LYNN MAKSYM,

Plaintiffs-Appellants,

v

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
February 24, 2026
1:25 PM

No. 372827
Wayne Circuit Court
LC No. 23-013880-CK

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

CAMERON, P.J.

In this case involving an insurance coverage dispute, plaintiffs appeal as of right the trial court's order denying their motion to compel an appraisal and granting defendant's motion for summary disposition under MCR 2.116(C)(7) (statute of limitations). We affirm, in part, reverse, in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed an insurance claim with defendant, their insurer, after a pipe broke in their second-floor bathroom. This allowed water to accumulate under plaintiffs' bathroom floor, break through the kitchen ceiling below, and damage plaintiffs' property. Defendant promptly inspected plaintiffs' home, noting water damage to the kitchen ceiling and to a section of the upper kitchen cabinets.

On August 18, 2022, defendant notified plaintiffs in writing that their policy provided coverage for "the water damage resulting from the leaking pipe." Defendant also notified plaintiffs that coverage did not apply for certain other expenses sought by plaintiffs. Specifically, defendant denied coverage for the repairs and upgrades that plaintiffs subsequently made to their home plumbing system because plaintiffs' policy only covered accidental direct damage caused by the leak, not repairs to the broken pipe or preventive upgrades to the plumbing system. Defendant

further advised plaintiffs that they were not entitled to additional living expenses[1] because plaintiffs had informed defendant that the water leak did not render their home unlivable.

In February 2023, defendant provided a written response to plaintiffs' demands for additional coverage. It informed plaintiffs that there was no coverage for the plumbing improvements to their home, the second-floor bathroom, or the "remaining main floor kitchen interior." Defendant acknowledged its liability for damage to a section of the kitchen walls, ceiling, upper and lower cabinets near the leak, and a granite countertop and backsplash in the kitchen. Defendant made two payments to plaintiffs that totaled about $10,000 to compensate plaintiffs for their loss.

During the next six months, plaintiffs remodeled their home. Plaintiffs challenged defendant's partial denial of their claim and submitted a proof of loss that they were entitled to approximately $135,000 for things such as additional living expenses, renovations to the second-floor bathroom and tile shower, recarpeting the stairs, refinishing the hardwood floors, painting services, new kitchen appliances, upgrades to the home's plumbing system, and other open items identified as "to be determined." Defendant rejected plaintiffs' proof of loss, explaining that plaintiffs had not provided photographic documentation demonstrating damage caused by the leak and need to support their "to be determined" claims, second-floor claims, and claims regarding additional cabinetry and appliances in the kitchen. Defendant reiterated that it was still denying liability for plaintiffs' plumbing claims.

Plaintiffs then demanded an appraisal. Defendant responded that an appraisal was premature because plaintiff had not provided defendant with the requested proofs that were necessary to make a coverage decision regarding the disputed additional items. Defendant gave plaintiffs until June 12, 2023 to provide sufficient proofs, noting that, if they failed to do so, "coverage for [their claims] may be jeopardized." After the deadline passed, defendant notified plaintiffs that, because they had failed to support their claim, defendant was "unable to consider the additional scope outlined in [their] estimate." In other words, this was the date that defendant formally denied liability for all plaintiffs' unproven claims. Defendant agreed to an independent appraisal for only the damaged property for which it acknowledged liability.

Plaintiffs filed suit on October 25, 2023. They later moved the trial court to compel defendant to engage in an appraisal of all of plaintiffs' claims, including those that had been denied. They argued that defendant had acted in bad faith by refusing to participate in an appraisal because its decision to make partial payments to plaintiffs was an admission that coverage applied. Defendant responded that an appraisal was premature because it had not verified all of plaintiffs' alleged losses. The issue of coverage had to be decided by the trial court before an appraisal could be considered. Defendant then moved for summary disposition, arguing that plaintiffs' claims were barred by the policy's one-year limitations period.

The trial court found that defendant denied plaintiffs' claim August 18, 2022, meaning the limitations period began to run on this date and expired August 18, 2023. This rendered plaintiffs'

---

[1] Plaintiffs' policy provided additional living expenses coverage "[i]f a covered loss makes [the insured's] residence premises unfit to live in[.]"

complaint untimely. Plaintiffs argued that the limitations period foreclosed only their plumbing-repair claim because that was the only claim expressly denied in defendant's August 18, 2022 letter. But the trial court found the August 18, 2022 denial letter to be a denial of liability for all outstanding claims, applied the limitations period, and granted summary disposition to defendant. Plaintiffs now appeal.

## II. SUMMARY DISPOSITION

Plaintiffs first argue that the trial court erred by granting summary disposition of their entire claim. We agree, in part.

## A. STANDARD OF REVIEW

This Court reviews a trial court's grant of summary disposition de novo. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 21; 896 NW2d 39 (2016). "Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Id*. (quotation marks and citation omitted). "Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute." *Id*. (quotation marks and citation omitted).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Id*. (quotation marks and citation omitted).]

## B. WAIVER

As a preliminary matter, we note that plaintiffs argue that defendant waived any limitations-period defense by failing to raise it in its affirmative defenses. See *Dell v Citizens Ins Co of America*, 312 Mich App 734, 752; 880 NW2d 280 (2015) (noting that a statute-of-limitations defense is an affirmative defense that "must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118"), quoting MCR 2.111(F)(3). But we need not consider whether defendant waived this defense, because it sought leave to amend, and the trial court "constructively granted leave to amend by allowing argument and, ultimately, dismissing the action" on the basis of the limitations period. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 10; 614 NW2d 169 (2000).

## C. LIMITATIONS PERIOD

The question of whether the policy's limitations-period provision bars plaintiffs' claims turns on when defendant formally denied liability. The policy's "Action Against Us" provision provides:

> We may not be sued unless there is full compliance with all the terms of this policy. Action must be brought within one year after the loss or damage occurs. The time for commencing an action is tolled from the time you notify us of the loss or damage until we formally deny liability for the claim.

This provision is consistent with MCL 500.2833(1)(q), which directs that "[t]he time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability." A "formal denial such as is necessary to end tolling must be explicit and unequivocally impress upon the insured the need to pursue further relief in court." *Smitham v State Farm Fire & Cas Co*, 297 Mich App 537, 545; 824 NW2d 601 (2012) (emphasis omitted).

Defendant's August 18, 2022 letter notified plaintiffs that it acknowledged liability "for the water damage resulting from the leaking pipe[.]" It denied coverage for: (1) "plumbing repairs," providing further clarification that there was "no coverage for the plumbing throughout the home[;]" and (2) additional living expenses because "the water damage in the kitchen had not rendered [plaintiffs'] home unlivable." But the letter did not formally deny liability for plaintiffs' other claims. For example, while the letter noted plaintiffs' prior statement that the water damage was limited to the kitchen area and that there was no damage to the second-floor bathroom, defendant did not expressly deny liability for the second-floor bathroom or for other items beyond the kitchen area. Whether this letter was a formal denial of these claims is further called into question by defendant's subsequent requests that plaintiffs provide documentation in support of their claims related to the bathroom and other kitchen-related losses, which suggest the question of liability remained unresolved until plaintiffs provided sufficient support for their claim. We therefore conclude that a question of fact exists about whether defendant's denial of the second-floor and other kitchen claims in the August 18, 2022 letter was equivocal or even revoked. *Dep't of Environmental Quality*, 318 Mich App at 21.

## III. APPRAISAL

Plaintiffs next argue that the trial court should have compelled a full appraisal of their claims. We disagree.

## A. STANDARD OF REVIEW

We review issues of statutory interpretation de novo. *Cantina Enterprises II Inc v Prop-Owners Ins Co*, 349 Mich App 682, 690; 28 NW3d 800 (2024). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Under MCL 500.2833(1)(m), if an insured and insurer "fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal." The appraisal process "has been characterized as a substitute for judicial determination of a dispute concerning the amount of a loss and a simple and inexpensive method for the prompt adjustment and settlement of claims." *Cantina Enterprises II Inc*, 349 Mich App at 693 (quotation marks and citations omitted). "Its purpose is to resolve the amount of loss in insurance disputes where liability has been admitted." *Id*. The issue of whether coverage exists is one for the trial court, but "[o]nce an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of loss." *Id*. at 694 (quotation marks and citation omitted). "However, if liability is not admitted by an insurer, the trial court must first determine the issue of coverage before ordering appraisal." *Id*. (quotation marks, ellipses, and citation omitted).

Plaintiffs argue that *Cantina* stands for the broad proposition that a "partial payment" is an acknowledgment of liability that entitles an insured, like plaintiffs, to an appraisal. We read *Cantina*'s holding to be far narrower. In *Cantina*, the plaintiff-insured business was damaged in a fire. *Id*. at 685. The defendant-insurer notified the plaintiff that certain items identified in the plaintiff's loss estimate might be covered "as betterments or improvements if documentation could show that [the] plaintiff, and not [the] plaintiff's landlord, installed the items in the building." *Id*. at 686. After the plaintiffs provided additional information, the parties disagreed whether the information provided was sufficient. *Id*. at 686-687. Despite their ongoing dispute, the defendant, recognizing that "there was no dispute that the fire was a covered event under the policy," began paying the plaintiff's claim, "including $30,000 for [the] plaintiff's improvements and betterments to the leasehold space." *Id*. at 686.

This Court held that the defendant "admitted that the fire [was] covered under the policy by making payments on the claim," meaning the only remaining issue was the "amount of money owed to [the] plaintiff for the loss." *Id*. at 698. In other words, the defendant concluded that it was contractually liable for certain "betterments or improvements" that were damaged in the fire; thus, the remaining issue was "merely a factual dispute about whether [the] plaintiff [had] proved the loss[.]" *Id*. Importantly, the defendant in *Cantina* never formally denied liability for the claim at issue; instead, it contended that the proofs provided by the plaintiff were insufficient to establish coverage while, at the same time, making partial payments for the betterments and improvements and advising the plaintiff that it could still submit more proofs. *Id*. at 687. This Court reasoned that the defendant's behavior demonstrated that it had conceded that the betterments-and-improvements coverage applied to the plaintiff's claim, and that the only dispute remaining was how much of the plaintiff's claimed betterments and improvements were actually covered. *Id*. at 698. As such, this Court held that the plaintiff was entitled to an appraisal. *Id*.

Plaintiffs' argument that they are entitled to an independent appraisal to evaluate the merit their $135,000 claim relies on a strained reading of *Cantina* that conflates disputes over coverage with the valuation of a claim after liability is acknowledged. Unlike the defendant in *Cantina*, defendant in this case paid for specific damaged property that it determined were covered losses. Thus, defendant did not make "partial payments" for the disputed claims at issue. Rather,

defendant paid plaintiffs for specific damages that it determined were covered under the policy, while disputing liability for other claims. Accordingly, this issue is not simply the "amount of money owed to plaintiff[s] for the loss[,]" *id.* at 698; plaintiffs were not entitled to an appraisal on their remaining claims because the question of whether they were covered at all remained in dispute, *id.* at 694.

Affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young