RADU v HERNDON & HERNDON INVESTIGATIONS, INC

Docket No. 304485. Submitted August 6, 2013, at Detroit. Decided August 29, 2013, at 9:05 a.m.

Walter W. and Lindsay K. Radu brought an action in the Oakland Circuit Court against Herndon & Herndon Investigations, Inc., Timothy P. Herndon, and Charles Farley, alleging nine counts arising from a fire in the engine compartment of plaintiffs' vehicle and charges of burning insured property and insurance fraud brought against Walter Radu. Count I alleged a claim of malicious prosecution against all defendants. Count II alleged a claim of injurious falsehood against all defendants. Count III alleged a claim of tortious interference with economic relationships against all defendants. Count IV alleged a claim of intentional infliction of emotional distress against all defendants. Count V alleged claims of negligence against the Herndon defendants and gross negligence against Farley. Count VI alleged an invasion of privacy claim against all defendants. Count VII alleged an abuse of process claim against Farley. Count VIII alleged that Walter Radu was denied due process because defendants conspired to pursue the criminal prosecution against him in violation of 42 USC 1983. Count IX alleged that Walter Radu was denied equal protection of the law because defendants acted in concert and in an arbitrary and capricious manner in violation of 42 USC 1983. The Herndon defendants filed two motions for summary disposition. The first motion was based on their claim that they were entitled to statutory immunity. The second motion concerned a release that was entered in a separate action brought by plaintiffs against the insurer of their burned vehicle. Defendants alleged in that motion that plaintiffs' claims were barred as a consequence of the release plaintiffs entered into with the insurer, which release included the insurer's "representatives," and alleged that the Herndon defendants had been acting as representatives of the insurer and were protected by the release. The court, Rae Lee Chabot, J., granted both motions, concluding that the Herndon defendants were entitled to statutory immunity and that the claims against the Herndon defendants were barred by the release. Farley also sought summary disposition, alleging, in part, that the claims against him were barred by governmental immunity and that Farley's conduct

was not the proximate cause of plaintiffs' claimed injuries. The court granted Farley's motion for summary disposition. Plaintiffs appealed.

The Court of Appeals *held*:

1. The Herndon defendants spoke and acted on behalf of the insurer of the vehicle by delegated authority with regard to the investigation of the fire. The trial court properly held that the Herndon defendants were "representatives" of the insurer within the meaning of the release language.

2. Timothy Herndon was not a signatory to the release. Therefore, the portion of the trial court's order granting summary disposition premised on the Herndon defendants' claim that the case was barred because Herndon had been a signatory to the release was improperly granted and is vacated.

3. The trial court properly granted the Herndon defendants' motion for summary disposition premised on statutory immunity pursuant to MCL 29.4(6) and MCL 500.4509(3). The definition of malice applicable in defamation actions appears appropriate in the context of both statutes. Malice exists for purposes of both statutes when a person supplying information or data to the appropriate authorities set forth in the statutes does so with knowledge of its falsity or with reckless disregard of its truth or falsity. The trial court properly held that plaintiffs failed to present evidence sufficient to allow a rational finder of fact to conclude that Timothy Herndon acted with malice with regard to the information he provided related to the vehicle fire.

4. There is no merit to plaintiffs' claims that Farley did not act in a timely manner when investigating the vehicle fire. Evidence was not presented that would lead a reasonable fact-finder to conclude that Farley's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result. The trial court properly dismissed the state law claims against Farley.

5. The trial court properly dismissed the intentional tort claims against Farley. Plaintiffs presented insufficient evidence for a reasonable fact-finder to conclude that Farley did not act in good faith with regard to the investigation of the fire and the prosecution of Walter Radu.

6. To the extent that plaintiffs attempted to state a claim of malicious prosecution under 42 USC 1983, the claim was properly dismissed. There is no evidence to support plaintiffs' claim that Farley knowingly provided false information to the prosecutor's office in an attempt to persuade the prosecutor to file criminal charges against Walter Radu. There is also no evidence that Farley

otherwise participated in the prosecutor's decision to prosecute Walter Radu. Farley's motion for summary disposition was properly granted with regard to plaintiffs' 42 USC 1983 malicious prosecution claim.

Affirmed in part and vacated in part.

1. WORDS AND PHRASES — REPRESENTATIVE — REPRESENT.

A "representative" is a person or thing that represents another or others; to "represent" means to stand or act in place of, as an agent or substitute, and to speak and act for by delegated authority.

2. ARSON — INSURANCE FRAUD — IMMUNITY — MALICE.

The purpose of both MCL 29.4 of the Fire Prevention Code and MCL 500.4509 of the Insurance Code is to foster the communicative and evaluative processes related to fire prevention and insurance-fraud prevention; both statutes grant immunity to persons who have provided information related to investigations of suspected arson and suspected insurance fraud if the persons acted without malice; malice exists for purposes of both statutes when a person supplying information or data to the appropriate authorities does so with knowledge of its falsity or with reckless disregard of its truth or falsity.

3. TORTS — GOVERNMENTAL IMMUNITY — WORDS AND PHRASES — GROSS NEGLIGENCE.

"Gross negligence," for purposes of the statute providing that a governmental employee is immune from tort liability for an injury caused by the employee while in the course of employment if the employee was acting within the scope of his or her authority, the governmental agency was engaged in the exercise of a governmental function, and the employee's conduct did not amount to gross negligence that was the proximate cause of the injury, is conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results (MCL 691.1407[2], and [7][a]).

4. MALICIOUS PROSECUTION — ELEMENTS — FOURTH AMENDMENT — CIVIL RIGHTS.

A claim of malicious prosecution under 42 USC 1983 premised on a violation of the Fourth Amendment consists of four elements: first, the defendant must have influenced or participated in the decision to prosecute the plaintiff, second, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, third, the plaintiff must show that, as a consequence of a legal proceeding, he or she suffered a deprivation of liberty apart from

the initial seizure, and fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Cummings, McClorey, Davis & Acho, PLC* (by *Timothy Young* and *Karen M. Daley*), for Walter and Lindsay Radu.

*Hewson & Van Hellemont, PC* (by *James F. Hewson* and *Jerald Van Hellemont*), for Herndon & Herndon Investigations, Inc.

*Law Offices of Mark A. Hypnar, PC* (by *Mark A. Hypnar*), for Timothy Herndon.

*Kaufman, Payton & Chapa, PC* (by *Ralph C. Chapa, Jr.*), and *James G. Gross, PLC* (by *James G. Gross*), for Herndon & Herndon Investigations, Inc, and Timothy Herndon.

*Potter, DeAgostino, O' Dea & Patterson* (by *Steven M. Potter* and *Rick J. Patterson*) for Charles Farley.

Before: SERVITTO, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM. Plaintiffs, Walter and Lindsay Radu, appeal as of right an order granting two motions for summary disposition in favor of defendants Herndon & Herndon Investigations, Inc (Herndon Investigations), and Timothy Herndon (Herndon), pursuant to MCR 2.116(C)(7), on the basis of release and statutory immunity. We affirm. Plaintiffs also appeal as of right an order granting a motion for summary disposition in favor of defendant Charles Farley (Farley) pursuant to MCR 2.116(C)(7) (governmental immunity) and (C)(10). We affirm in part and vacate in part.

On December 17, 2005, there was a fire in the engine compartment of plaintiffs' 2004 Jeep Grand Cherokee that plaintiff Walter Radu (Walter) had driven to a local

park. Walter, a firefighter for the Dearborn Fire Department, claimed that he parked the vehicle, got out of it and, as he was walking away, heard a noise. When he looked back, he saw smoke coming from the passenger-side front wheel well. He then returned to the vehicle and attempted to start it so that he could drive it to the fire department located close to the park. When smoke started coming through the interior heating vents, he got out of the vehicle and called 911. There were no witnesses in the park at the time who have been identified. A deputy from the Oakland County Sheriff's Office and firefighters from the Commerce Township Fire Department responded to the vehicle fire. After the fire was extinguished, the vehicle was towed to a local facility and was placed in an outdoor storage lot. The fire was not considered suspicious in nature by the firefighter in charge or the deputy.

On the same day, plaintiffs filed an insurance claim with Auto Club Insurance Association (ACIA). On December 30, 2005, ACIA hired defendant Herndon Investigations to investigate the claim. On January 2, 2006, defendant Herndon examined the vehicle to determine the origin and cause of the fire. During his inspection, Herndon noticed that the main fuel line was severed at the rear of the engine compartment on the driver's side, as well as at the fuel rail connection. After Herndon completed his entire investigation, he concluded that the fire was incendiary in nature. The Oakland County Sheriff's Office's fire investigation unit was contacted.

On January 5, 2006, defendant Charles Farley, a certified fire investigator for the Oakland County Sheriff's Office (OCSO), requested that ACIA provide him with insurance information related to plaintiffs' vehicle and ACIA's fire investigation. On January 6, 2006, Farley conducted an examination of the vehicle. He noted that

the fuel line located at the rear of the engine block, on the driver's side, was cut and that the metal joint from the fuel rail to the fuel line was also cut. Farley also noticed that about 18 inches of the fuel line was missing. After Farley completed his initial investigation, he concluded that the fire was incendiary in nature. However, Farley continued to investigate the matter, supplementing his initial report several times through October 2, 2007, but his opinion did not change. Therefore, he submitted to the prosecutor's office a request for a warrant review and attached his reports, witness statements, and other information. The prosecutor's office decided to prosecute, and Walter was charged with burning insured property in violation of former MCL 750.75, see MCL 750.76, effective April 3, 2013, and insurance fraud in violation of MCL 500.4511(1). Although he was bound over as charged after a finding of probable cause, the prosecutor eventually filed a petition for a *nolle prosequi*, which was granted.

Also in 2007, plaintiffs filed a complaint against ACIA, alleging breach of contract with regard to ACIA's denial of their insurance claim. In 2008, that matter was resolved and the parties entered into a release, settlement agreement, and nondisclosure agreement. The settlement agreement released ACIA, as well as its employees and representatives, from any related "claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . ." The nondisclosure agreement was executed by all persons and entities involved in the litigation, including Herndon and all the attorneys involved.

In 2009, plaintiffs filed the complaint at issue in this matter, arising from defendants' investigation of the vehicle fire. In count I, plaintiffs alleged a claim of malicious prosecution against all defendants, asserting that they initiated the criminal prosecution against

Walter after their cursory fire investigation led to their unsupported accusations of arson. In count II, plaintiffs alleged a claim of injurious falsehood against all defendants, asserting that their cursory and incomplete fire investigation resulted in false, published, and injurious accusations that led to significant damages. In count III, plaintiffs alleged a claim of tortious interference with economic relationships against all defendants, asserting that their false, published accusations caused the denial of plaintiffs' insurance claim, the denial of future insurance coverage, and detrimental employment and business repercussions. In count IV, plaintiffs alleged a claim of intentional infliction of emotional distress against all defendants, asserting that defendants' conduct and accusation of arson were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. In count V, plaintiffs alleged claims of negligence against the Herndon defendants and gross negligence against Farley. In count VI, plaintiffs alleged an invasion of privacy claim against all defendants, asserting that defendants improperly disclosed their investigations to Walter's employer and discussed potential criminal charges, thus intruding on plaintiffs' right to privacy. In count VII, plaintiffs alleged an abuse of process claim against Farley, asserting that he abused the criminal investigation process for his own purpose and inappropriately appeared at Walter's place of business unannounced to discuss potential criminal charges with Walter's supervisor. In count VIII, plaintiffs alleged that Walter was denied due process because defendants conspired to pursue the criminal prosecution against him in violation of 42 USC 1983. In count IX, plaintiffs alleged that Walter was denied equal protection under the law because defendants acted in concert and in an arbitrary and capricious manner in violation of 42 USC 1983.

Eventually, the Herndon defendants filed two motions for summary disposition. In the first motion, brought pursuant to MCR 2.116(C)(7), the Herndon defendants argued that they were entitled to statutory immunity. They argued that plaintiffs' claims arose from the fact that they provided information regarding their fire investigation to Farley and, eventually, criminal charges were brought against Walter. However, they were immune from civil liability pursuant to the Fire Prevention Code, MCL 29.4(6), because the fire investigation report was provided to Farley, without fraud or malice, and upon written request during his investigation of suspected arson. The Herndon defendants also argued that they were entitled to immunity pursuant to the Insurance Code, MCL 500.4509(2) and (3), because their fire investigation information was provided to Farley, without malice and upon written request, during Farley's investigation of suspected insurance fraud. Further, plaintiffs' allegations of malice were without merit as a matter of law because Herndon did not have knowledge that his statements were false and he did not act with reckless disregard with regard to the veracity of his statements.

Plaintiffs responded to the Herndon defendants' motion, arguing that they were not entitled to statutory immunity. Plaintiffs claimed that Herndon acted with malice because he provided false information that he knew to be false or, at least, acted with reckless disregard as to whether his information was false. In particular, plaintiffs argued that Herndon "recklessly disregarded the fact that the fuel line was separated, dislodged or otherwise removed *after* the fire." Moreover, the statutes cited by the Herndon defendants do not grant immunity to the author of the information that was ultimately furnished to the authorities by the insurance company, ACIA. Therefore, plaintiffs argued, the Herndon defendants were not entitled to statutory immunity.

In their second motion for summary disposition, brought pursuant to MCR 2.116(C)(7), the Herndon defendants argued that plaintiffs' claims were barred as a consequence of the release plaintiffs entered into with ACIA. In particular, the Herndon defendants argued that the release included ACIA's "representatives" and, when they conducted the fire investigation at issue in this matter, the Herndon defendants were acting as "representatives" of ACIA. Plaintiffs opposed this motion, arguing that the Herndon defendants were not entitled to benefit from the release because they were not "representatives" of ACIA; rather, they were independent contractors specifically hired only to do an investigation for ACIA. And, plaintiffs argued, Herndon was merely a signatory of the nondisclosure agreement, which was clearly separate and distinct from the release because the Herndon defendants were not parties to that lawsuit.

Following oral arguments on the Herndon defendants' motions for summary disposition, the trial court granted both motions. First, the trial court concluded that there was no evidence from which to infer that Herndon made the statements in his fire investigation report with malice or with actual knowledge of any falsehood. Further, the trial court held that the Herndon defendants were "otherwise cooperating with an investigation" as set forth in MCL 500.4509(3) and they "furnishe[d] information on behalf of an insurance company" as set forth in MCL 29.4(6). Accordingly, the Herndon defendants were entitled to summary disposition on the basis of statutory immunity. Second, the trial court concluded that plaintiffs' claims against the Herndon defendants were barred by the terms of the release; thus, they were also entitled to summary disposition on that ground as well. Plaintiffs' motion for reconsideration was denied.

Defendant Farley also filed a motion for summary disposition. Farley averred that plaintiffs' claims of intentional torts, gross negligence, and constitutional violations arose from Farley's submission of his fire investigation reports to the prosecutor in his request for a warrant review regarding possible criminal charges against Walter. Plaintiffs subsequently hired experts who reached contrary conclusions regarding the cause of the fire; however, such a difference of opinion did not give rise to a cause of action. Further, although plaintiffs challenged the thoroughness of Farley's investigation, the investigation was sufficient to prompt the prosecutor's office to issue a warrant and the court determined that probable cause existed to bind Walter over on the charges. More specifically, Farley argued, plaintiffs' intentional tort claims, including their malicious prosecution, injurious falsehood, tortious interference with economic relationships, intentional infliction of emotional distress, invasion of privacy, abuse of process, and constitutional violation claims, were barred by governmental immunity. Further, plaintiffs' gross negligence claim was the same as their malicious prosecution claim; thus, it was also barred. Moreover, the gross negligence claim must fail because Farley's conduct was not the proximate cause of plaintiffs' claimed injuries; rather, the prosecutor's decision to bring the criminal charges against Walter was the proximate cause of the alleged injuries. Accordingly, Farley argued, he was entitled to summary disposition of plaintiffs' claims.

Plaintiffs opposed Farley's motion for summary disposition, arguing that Farley was not entitled to governmental immunity regarding their intentional tort and gross negligence claims because he acted with malice, without good faith, and in a manner so reckless as to demonstrate a substantial lack of concern for

whether an injury would result with regard to his investigation of this vehicle fire. Further, plaintiffs argued, Farley was not entitled to summary dismissal of their malicious prosecution claim because he influenced or participated in the decision to prosecute Walter and made false statements that established probable cause with regard to the criminal charges against Walter. Moreover, Farley's appalling conduct during the investigation of the vehicle fire met the "shocks-the-conscience" threshold; thus, Farley was not entitled to summary dismissal of plaintiffs' equal protection claim. Accordingly, plaintiffs argued, Farley's motion for summary disposition should be denied in its entirety.

Following oral arguments, the trial court granted Farley's motion for summary disposition. The trial court held that Farley was entitled to governmental immunity. Further, the court concluded that Farley was entitled to dismissal of plaintiffs' gross negligence claim because the evidence did not give rise to a reasonable inference that Farley's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result. And the trial court concluded that Farley was entitled to summary dismissal of plaintiffs' constitutional claims because his actions did not shock the conscience and there was no evidence that he was motivated by a discriminatory purpose. This appeal followed.

Plaintiffs first argue that the trial court erred by granting the Herndon defendants' motion for summary disposition on the basis of the release executed in plaintiffs' case against ACIA. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). When the plaintiffs' claims are barred because of a

release, summary disposition is proper under MCR 2.116(C)(7). *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996). The interpretation of a release presents a question of law that this Court reviews de novo. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000).

Contract law applies to disputes involving the terms of a release. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Id.* (quotation marks and citation omitted). "The scope of a release is governed by the intent of the parties as it is expressed in the release." *Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 201; 428 NW2d 26 (1988). If the language is unambiguous, it must be construed, as a whole, according to its plain and ordinary meaning. *Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d 300 (2008); *Cole*, 241 Mich App at 13.

Plaintiffs' previously filed lawsuit against ACIA was dismissed after the parties entered into a "GENERAL RELEASE, SETTLEMENT AGREEMENT, AND NON-DISCLOSURE AGREEMENT." The document provided, in part, that

> the parties to this Agreement and to the above-referred litigation wish to avoid trial and the resulting uncertainty of a verdict, and have agreed that the pending litigation shall be dismissed, with prejudice and without costs to any party, upon such terms as are reflected in this General Release and Settlement Agreement[.]

It further stated that plaintiffs

> do forever release and discharge the Auto Club Insurance Association, its employees and representatives . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . .

The document also provided as follows:

> IN FURTHER CONSIDERATION for the dismissal of this cause of action . . . Plaintiffs Walter Winston Radu and Lindsay K. Radu; Timothy Young, Attorney for Walter and Lindsay Radu in the civil litigation; Defendant Auto Club Insurance Association and its attorneys, including Mary Look; and Kevin S. Carden, Attorney for the Auto Club Insurance Association, and their agents, employees and representatives; and anyone involved in this litigation including Herndon and Associates, Walter Herndon, Timothy Herndon, Daniel Terski, and any and all of its employees and representatives; and Mark Hypnar, attorney for Timothy Herndon; agree that they shall not disclose the terms or conditions of the dismissal of this litigation to anyone other than the attorneys to this litigation, the Court, and the parties to this litigation as necessary, except as required by law or by Court Order.

In their motion for summary disposition, the Herndon defendants argued that they were "representatives" of ACIA within the contemplation of the release. It appears that the trial court agreed with the Herndon defendants' argument, as do we. The release does not define the term "representatives"; thus, "a dictionary may be used to determine the ordinary meaning of a word or a phrase." *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 292 n 4; 818 NW2d 460 (2012). According to *Random House Webster's College Dictionary* (2d ed, 1997), a "representative" is "a person or thing that represents another or others." And the word "represent" means "to stand or act in place of, as an agent or substitute" and "to speak and act for by delegated authority." *Id.*

In this case, it is undisputed that the Herndon defendants were hired by ACIA to investigate plaintiffs' insurance claim. That is, with regard to the investigation of the vehicle fire, the Herndon defendants repre-

sented ACIA's interests. In that capacity, Herndon went to the storage lot where plaintiffs' vehicle was located and conducted his investigation on behalf of ACIA. Herndon also contacted the OCSO's fire investigation unit to report the vehicle fire on behalf of ACIA and then consulted with Farley during his investigation of the vehicle fire. Thus, we conclude that the Herndon defendants spoke and acted on behalf of ACIA by delegated authority with regard to the investigation of the vehicle fire. Accordingly, the Herndon defendants were "representatives" of ACIA within the plain meaning of the release language.

The Herndon defendants also briefly argued in the trial court, as they do on appeal, that Herndon was a signatory to the release. We disagree. Neither Herndon defendant was a party to the underlying breach of contract litigation between plaintiffs and ACIA; thus, they had no legal claim to "release" or settle with plaintiffs in that matter. Herndon was a signatory on the nondisclosure agreement only, not the release or settlement agreement, because Herndon Investigations had been hired by ACIA to investigate plaintiffs' insurance claim. Similarly, all the attorneys involved in that lawsuit were signatories to the nondisclosure agreement. Accordingly, the Herndon defendants' motion for summary disposition premised on their claim that plaintiffs' case was barred because Herndon was a signatory to the release entered into between plaintiffs and ACIA was improperly granted by the trial court and that portion of the order is vacated.

Next, plaintiffs argue that the trial court erroneously granted the Herndon defendants' motion for summary disposition premised on statutory immunity pursuant to MCL 29.4(6) and MCL 500.4509(3). We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Spiek*, 456 Mich at 337. A motion for summary disposition is properly granted under MCR 2.116(C)(7) if the action is barred by immunity, including statutory immunity. See *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). Questions of statutory interpretation are reviewed de novo. *Id.* at 467. Statutes are construed so as to give effect to the intent of the Legislature, as expressed by the language of the statute. *Id.* "While words are construed according to their plain and ordinary meaning, words that have acquired a peculiar and appropriate meaning in the law are construed according to that peculiar and appropriate meaning." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 673; 719 NW2d 1 (2006).

MCL 29.4(6) provides:

> In the absence of fraud or malice, an insurance company or a person who furnishes information on behalf of an insurance company is not liable for damages in a civil action or subject to criminal prosecution for an oral or written statement made or other action taken that is necessary to supply the information required under this section.

MCL 500.4509(3) provides:

> In the absence of malice, an insurer, or any officer, employee, or agent of an insurer, or any person who cooperates with, furnishes evidence, or provides information regarding suspected insurance fraud to an authorized agency . . . is not subject to civil liability for libel, slander, or any other tort, and a civil cause of action of any nature does not exist against the person, for filing a report, providing information, or otherwise cooperating with an investigation or examination of any of these entities, unless that person knows that the evidence, information, testimony, or matter contains false information pertaining to any material fact or thing.

In this case, plaintiffs argue that the Herndon defendants were not entitled to statutory immunity because questions of fact existed regarding (1) whether Herndon acted with malice when he reported that Walter intentionally caused the fire and (2) whether Herndon knowingly provided false information to ACIA regarding plaintiffs' vehicle fire. Accordingly, plaintiffs argue that questions of fact existed with regard to whether the "malice" exception to immunity set forth in both statutes applied under the circumstances in this case.

The statutes at issue in this case do not define the term "malice." However, in *Feyz*, 475 Mich at 683-684, our Supreme Court considered a similar "malice exception" within the medical peer review immunity statute, MCL 331.531. The *Feyz* Court noted that the purpose of the peer review immunity statute is "to foster the free exchange of information in investigations of hospital practices and practitioners, and thereby reduce patient mortality and improve patient care within hospitals." *Feyz*, 475 *Mich* at 666. Consistent with that purpose, the Court also noted that the Legislature clearly intended "to protect peer review participants from liability for participation in this communicative and evaluative process" if they participated without "malice." *Id*. And the Court held that " '[m]alice' is clearly a word that has acquired a peculiar meaning in the law." *Id*. at 683. In consideration of this "communicative context," the *Feyz* Court adopted the defamation definition of the term "actual malice," concluding that "it is the one definition that specifically concerns and promotes honest communication." *Id*. at 685-686; see also *id*. at 684 n 62. Thus, the Court held that "malice can be established when a 'person supplying information or data . . . does so with knowledge of its falsity or with reckless disre-

gard of its truth or falsity.' " *Id.* at 667, quoting *Veldhuis v Allan*, 164 Mich App 131, 136; 416 NW2d 347 (1987).

The purposes of both MCL 29.4 of the Fire Prevention Code and MCL 500.4509 of the Insurance Code similarly foster the communicative and evaluative processes related to fire prevention and insurance-fraud prevention. And, both statutory provisions clearly grant the protection of immunity to persons who have provided information related to investigations of suspected arson and suspected insurance fraud if they acted without malice. In light of the similarity of the statutes at issue in this case and the medical peer review immunity statute, we conclude that the definition of malice applicable in defamation actions appears appropriate in the context of both MCL 29.4(6) and MCL 500.4509(3). Accordingly, with regard to these statutes, malice exists when a person supplying information or data to the appropriate authorities, as set forth in the statutes, does so with knowledge of its falsity or with reckless disregard of its truth or falsity. See *Feyz*, 475 Mich at 690.

Plaintiffs argue that a question of fact existed regarding whether the "malice exception" to immunity set forth in both statutes applied because (1) the purportedly cut end of the fuel line was shiny, was not discolored, and did not have fire debris on the outside surface as it would have had if it had been exposed to fire and (2) there were unburned combustible cotton fibers on the edge of that cut fuel line that would have been burned in the fire. Plaintiffs argue, therefore, that Walter could not have separated the fuel line before the fire and that Herndon ignored this evidence and provided false information or, at least, acted with reckless disregard of it when he communicated his opinion that

Walter intentionally caused this vehicle fire. We cannot agree with plaintiffs that the evidence in this case created a question of fact regarding whether Herndon acted with malice under MCL 29.4(6) and MCL 500.4509(3) when he provided information related to the vehicle fire.

In *Ireland v Edwards*, 230 Mich App 607, 622; 584 NW2d 632 (1998), this Court held:

> Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. "Reckless disregard" is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published. [Quoting *Grebner v Runyon*, 132 Mich App 327, 332-333; 347 NW2d 741 (1984) (quotation marks and citations omitted).]

Further, generally, a failure to investigate is not sufficient to establish reckless disregard, although the "purposeful avoidance of the truth" may be sufficient. *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 117; 793 NW2d 533 (2010), quoting *Harte-Hanks Communications, Inc v Connaughton*, 491 US 657, 692; 109 S Ct 2678; 105 L Ed 2d 562 (1989) (quotation marks omitted).

In this case, Herndon was hired to render an opinion about the origin and cause of the vehicle fire. After his investigation, and in light of his experience with such investigations, he concluded that the fuel line had been intentionally cut before the fire, which caused the fire when Walter attempted to start the vehicle. Plaintiffs disagree with his conclusions and submitted affidavits

from experts who opined that there were other potential explanations for the severed fuel line and other potential, accidental causes of the vehicle fire. However, the fact that a mere difference of opinion exists regarding plausible scenarios does not lead to the conclusion that Herndon knowingly provided false information to ACIA with regard to his opinion. Further, reckless disregard for the truth is not established merely by showing that Herndon may have conducted an insufficient investigation. Nevertheless, a metallurgical engineer also investigated this matter by conducting an analysis of the subject components of the fuel system and determined that "the fuel tube was subjected to repeated bending until breakage occurred." The metallurgical engineer also determined that this "breakage occurred prior to the fire, as the fracture surface and the tube OD [outer diameter] contain the same inorganic debris which was created and deposited during the fire." In his deposition, the metallurgical engineer testified that the combustible cotton fibers found on the edge of the cut fuel line were deposited there after the fire, which was consistent with Herndon's deposition testimony that he wore jersey-style cotton gloves during his inspection of the vehicle. In any case, we agree with the trial court that plaintiffs have failed to present evidence sufficient to allow a rational finder of fact to conclude that Herndon acted with malice with regard to the information he provided related to the vehicle fire. Accordingly, we affirm the trial court's decision to grant the Herndon defendants' motion for summary disposition on the ground that plaintiffs' claims were barred by immunity as set forth in MCL 29.4(6) and MCL 500.4509(3).

Plaintiffs next argue that the trial court erroneously granted Farley's motion for summary disposition after concluding that governmental immunity barred plaintiffs' state law claims because a reasonable juror could

conclude that Farley's actions were grossly negligent. After review de novo of the trial court's decision, we disagree. See *Spiek*, 456 Mich at 337.

If governmental immunity bars a plaintiff's claims, then summary disposition under MCR 2.116(C)(7) is proper. *Odom*, 482 Mich at 466. "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce v City of Lansing*, 265 Mich App 174, 177; 694 NW2d 65 (2005).

MCL 691.1407(2) generally provides that a governmental agency's employee is immune from tort liability for an injury caused by the employee while in the course of employment if (a) the employee was acting within the scope of his or her authority, (b) the governmental agency was engaged in the exercise of a governmental function, and (c) the employee's conduct did not amount to gross negligence that was the proximate cause of the injury. In this case, plaintiffs argue that Farley was not entitled to the protection of immunity because his conduct amounted to gross negligence. Plaintiffs argue as follows:

> Based solely upon information from Timothy Herndon that the fire was suspicious, Farley investigated [plaintiffs'] vehicle fire on January 6, 2006 — 21 days after the fire and 21 days after the vehicle sat in an unsecured lot. After inspecting the vehicle and speaking with Defendant Herndon, Farley concluded that [Walter] deliberately cut the fuel line before the fire. However, as the evidence demonstrates, there is no way the fire could have occurred as concluded by Defendant Farley.

MCL 691.1407(7)(a) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." There-

fore, a plaintiff cannot survive a motion for summary disposition premised on immunity granted by MCL 691.1407(2) merely by presenting evidence that the employee's conduct amounted to ordinary negligence. *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). Rather, the plaintiff must present evidence that the "contested conduct was substantially more than negligent." *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). And if no reasonable jury could find that the employee's conduct amounted to gross negligence, the plaintiff's claim must be dismissed. *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998).

Here, to the extent that plaintiffs are arguing that Farley's investigation of the vehicle fire was not timely, we note that it was not until after Herndon had been hired by ACIA to investigate this vehicle fire that Farley became aware of the suspicious nature of the fire. Herndon did not examine the vehicle until January 2, 2006, at which time he determined that the fuel line was severed and Farley was subsequently notified of the suspicious nature of the vehicle fire. On January 5, 2006, Farley requested that ACIA provide him with information related to the vehicle and the fire. The next day, Farley inspected the vehicle. Thus, under the circumstances, plaintiffs' claims that Farley did not act in a timely manner are without merit. Further, the storage lot to which plaintiffs' vehicle was towed after the fire was a fenced lot and plaintiffs have provided no evidence from which to conclude that the vehicle had been tampered with before Farley conducted his investigation. To the contrary, Farley interviewed employees of the lot and was assured that the vehicle had not been tampered with while in the lot. Additionally, Farley testified that the front end of the vehicle was pushed up against a fence in the storage lot and that the

only means of access to the vehicle was through the rear hatch.

To the extent that plaintiffs challenge Farley's conclusion that Walter intentionally cut the fuel line and caused the fire, there is corroborating evidence that supports Farley's conclusion, as discussed earlier in this opinion. And, Farley testified that he arrived at his conclusion after considering all the circumstances as well as the physical evidence. He testified that his concerns regarding the fire included: "The fact that the fire happened, how it happened, that the vehicle owner was the only person around the vehicle at the time, [and] that the vehicle owner, when the vehicle was supposedly smoking, tried to start the car." That is, "[i]f the vehicle was possibly on fire, the last thing I would do as a rationale individual would [be to] jump into a vehicle that's on fire." It was clear that Walter had driven to the park without incident and, thus, the fuel line and fuel rail could not have been severed until after he arrived at the park. There were no witnesses at the park on this December day who have been identified. Farley also learned that the vehicle was leased and was well over the allotted mileage; thus, plaintiffs faced a "hefty bill" at the end of the lease.

Plaintiffs further argue that Walter did not smell of fuel at the scene of the fire and was not found to have any tools with which to cut the fuel line, which had a "shiny edge," inconsistent with the rest of the fuel line. However, the metallurgical engineer testified that the fuel line was not cut with a tool, but had been subjected to repeated bending until it broke. Although tool marks may have been located on the fuel line, a tool could have been used to facilitate the bending motions that eventually led to breakage. Further, this expert was made aware of the "shiny edge of the fuel line" and testified

that it did not change his conclusion that the stainless steel fuel line was severed before the fire. Farley disagreed that the cut edge of the fuel line was "shiny," and testified that the cut edge could have been a bit different in color compared to the outer surface because it had not been exposed to the elements for as long as the outer surface of the line. Herndon also testified that when he has burned vehicles after cutting a fuel line, he has noticed "a clean edge on the end after a fire, the way the gasoline burns has left clean or shinier ends or different color as to the rest of the fuel line." Moreover, Herndon testified that gasoline would not necessarily have poured out when the fuel line was severed because, when the engine is off, the fuel pump is not running. It is the fuel vapors that ignite when there is an attempt to start a vehicle. Although plaintiffs have presented affidavits from their experts that offer other possible explanations for the cut fuel line and cause of the fire, such evidence could not lead a reasonable fact-finder to conclude that Farley's conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Accordingly, the trial court properly dismissed plaintiffs' state law claims.

Plaintiffs next argue that the trial court erroneously dismissed their intentional tort claims against Farley because the evidence established that Farley did not act in good faith. We disagree.

As discussed by our Supreme Court in *Odom*, a governmental employee is immune from liability for intentional torts if the act was taken during the course of employment, the employee was acting within the scope of his or her authority, the employee was acting in good faith, and the act was discretionary not ministerial in nature. *Odom*, 482 Mich at 473-476. Here, plaintiffs argue that Farley did not act in good faith; thus, he was

not entitled to governmental immunity with regard to plaintiffs' intentional tort claims. The *Odom* Court held that a governmental employee does not act in "good faith" if the employee acts "maliciously or with a wanton or reckless disregard of the rights of another." *Id.* at 474 (citation and emphasis omitted). And " 'willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.' " *Id.* at 475, quoting *Burnett v City of Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982).

Plaintiffs argue that "the evidence establishes complete and utter bad faith by Defendant Farley in his continued investigation and prosecution of Mr. Radu. A jury could reasonably conclude that the evidence presented demonstrates that Farley deliberately made false and misleading statements and deliberately omitted key information from his warrant application in order to secure a warrant and manufacture probable cause." More specifically, plaintiffs' arguments focus on Farley's alleged failure to properly preserve the vehicle and ensure its chain of custody, his misstatements or "lies" related to the timing of his investigation, his deficient investigation regarding the vehicle fire, his decision to have a private laboratory conduct tests on the fuel components, and his participation in the prosecution of Walter on criminal charges, including advising the prosecutor that the fuel line was deliberately cut and ignoring the responding fire department's conclusion that the fire was accidental.

We have considered plaintiffs' numerous allegations and conclude that plaintiffs' evidence is insufficient for a reasonable jury to conclude that Farley did not act in good faith. As discussed already in this opinion, Farley timely

commenced his investigation of this vehicle fire after receiving the requested information from ACIA regarding its investigation of plaintiffs' insurance claim. The vehicle had been stored in a fenced lot and there is no evidence that it had been tampered with at the time of his investigation. Farley testified in his deposition that the vehicle had been stored "nose first up against a fence" and "it was not accessible except from the rear hatch." That Farley may have misspoken about the exact date his investigation commenced does not lead to a conclusion of malice. Further, Farley's investigation into this vehicle fire was fairly comprehensive and included interviews as well as further analysis by a metallurgical engineer. Although Walter claimed that there were people in the park on the morning of the fire, those people were never identified. And Farley's conclusion that the fuel line was intentionally severed before the fire was consistent with Herndon's conclusion, as well as the metallurgical engineer's conclusion. Although some of the responding fire department personnel concluded that the fire appeared accidental, they were not certified fire investigators and their opinions were not given following a thorough investigation. In any case, a reasonable jury could not conclude that Farley acted with malice, an intent to harm, or with such indifference to whether harm would result, so as to be the equivalent of a willingness that it does, merely because Farley investigated this matter despite any such opinions by the responding firefighters. Accordingly, plaintiffs' intentional tort claims were properly dismissed by the trial court.

Finally, plaintiffs argue that the trial court erroneously treated their 42 USC 1983 "malicious prosecution claim" as a state law claim and thus erred by dismissing it on the basis of governmental immunity. We conclude that the claim, to the extent that it was pleaded, was properly dismissed.

Count I of plaintiffs' complaint was titled: "MALI-
CIOUS PROSECUTION AGAINST THE HERNDON
DEFENDANTS AND DETECTIVE FARLEY." Count
VIII of plaintiffs' complaint was titled: "42 U.S.C. 1983
CLAIM AGAINST ALL DEFENDANTS." Thereafter,
plaintiffs averred in count VIII, in relevant part, as
follows:

102. Defendant Farley acted under color of state law
and with oppression and malice to Plaintiffs, to the depri-
vation of their rights, privileges and immunities secured by
the constitution and laws, including the right not to be
deprived of liberty or property without due process of law
as secured by the Fourth and Fourteenth Amendments to
the Constitution of the United States of America.

103. Defendant Farley made stigmatizing statements
about Plaintiff Walter Radu that called into question
Plaintiff's good name, reputation, honor and integrity.

104. Defendant Farley's statements impugned Plaintiff
Walter Radu's professional reputation, causing a signifi-
cant road-block in his continued ability to practice his
profession. The stigmatizing statements by Defendant Far-
ley to Plaintiff Walter Radu's employer causing them to
think Plaintiff had committed arson were false.

105. Defendant Herndon participated in the constitu-
tional wrong-doing, conspired with Defendant Farley to
have the criminal investigation reopened, maliciously pros-
ecuted the claim of arson against Plaintiff Walter Radu,
conspired to have the prosecution continued, and all De-
fendants knew, or should have known that a full disclosure
of the evidence would result in a dismissal of the charges
against Plaintiff Walter Radu, but all Defendants shared a
common goal to maintain a successful prosecution against
plaintiff Walter Radu which violated Plaintiffs' federally
protected rights.

106. As a direct and proximate result of the Defendants'
conduct, Plaintiffs suffered serious damages and injuries,
including, but not limited to, legal and medical expenses,
humiliation, outrage and indignity, mental distress, anxi-

ety, sleeplessness and depression; embarrassment, shock and trauma; other damages currently unascertainable, exemplary damages and punitive damages.

Count IX of plaintiffs' complaint was titled: "VIOLATION OF 42 U.S.C. § 1983" and "VIOLATION OF PLAINTIFFS' EQUAL PROTECTION RIGHTS."

Following oral arguments on Farley's motion for summary disposition, the trial court rendered its decision. After concluding that plaintiffs' state law claims were barred by governmental immunity and that Farley's actions did not rise to the level of gross negligence, those claims were dismissed. The trial court then held: "Likewise, the claims for violation of due process and equal protection are dismissed, as the actions do not shock the conscience, nor is there any evidence that Defendant was motivated by a discriminatory purpose." It appears from the trial court's holding that it construed count VIII of plaintiffs' complaint as a due process claim considering the averments in ¶ 102. Although in ¶ 105 plaintiffs alleged that Farley and Herndon conspired to have the criminal investigation reopened and "maliciously prosecuted the claim of arson" against Walter, it is not clear from their averments that plaintiffs were asserting a "malicious prosecution" claim premised on a violation of the Fourth Amendment. Nevertheless, we conclude that the trial court properly dismissed this claim, albeit for a different reason. See *Fisher v Blankenship*, 286 Mich App 54, 70; 777 NW2d 469 (2009). To the extent that plaintiffs attempted to state a claim of malicious prosecution under § 1983, such claim was properly dismissed.

As plaintiffs set forth in their brief on appeal, a claim of malicious prosecution under § 1983 premised on a violation of the Fourth Amendment consists of four elements. *Sykes v Anderson*, 625 F3d 294 (CA 6, 2010).

First, the defendant must have influenced or participated in the decision to prosecute the plaintiff. *Id.* at 308. Second, because this claim is premised on a violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. *Id.* Third, the plaintiff must show that, "as a consequence of a legal proceeding," he or she suffered a "deprivation of liberty," apart from the initial seizure. *Id.* at 308-309 (quotation marks and citations omitted). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Id.* at 309.

On appeal, plaintiffs argue that Farley influenced or participated in the decision to prosecute Walter and supplied false information to establish probable cause, which resulted in a bindover decision that was eventually dismissed by an order of *nolle prosequi*. However, first, the evidence shows that Farley merely provided the prosecutor's office with a request for a warrant review, which included his investigative reports and all the information he had acquired regarding the vehicle fire. There is no evidence to support plaintiffs' claim that Farley knowingly provided false information to the prosecutor's office in an attempt to persuade the prosecutor to file criminal charges against Walter. There is also no evidence that Farley otherwise participated in the prosecutor's decision to prosecute Walter. Second, in light of the evidence, probable cause supported the issuance of a warrant. Further, Farley did not testify at Walter's preliminary examination, only Herndon testified, and the lower court determined that there was probable cause to bind Walter over on the charges. Third, plaintiffs have failed to address the third element of a malicious prosecution claim by showing that, as a consequence of a legal proceeding, Walter suffered a deprivation of liberty. Plaintiffs did not address this element in their response to Farley's motion for sum-

mary disposition. And plaintiffs have failed to present any evidence showing that, as a consequence of the legal proceeding, Walter suffered a deprivation of liberty. Therefore, we conclude that Farley's motion for summary disposition pursuant to MCR 2.116(C)(10) was properly granted with regard to this claim.

In summary, the Herndon defendants' motions for summary disposition premised on statutory immunity and release were properly granted. The Herndon defendants were "representatives" within the contemplation of the release plaintiffs entered into with ACIA, but Herndon was not a signatory to the release; thus, the trial court's order in that regard is affirmed in part and vacated in part. The Herndon defendants were entitled to statutory immunity pursuant to MCL 29.4(6) and MCL 500.4509(3); thus, the trial court's order in that regard is affirmed. Accordingly, the trial court's order dismissing all of plaintiffs' claims against the Herndon defendants is affirmed. Further, defendant Farley's motion for summary disposition was properly granted; accordingly, the trial court's order dismissing all of plaintiffs' claims against Farley is affirmed.

Affirmed in part and vacated in part.

SERVITTO, P.J., and CAVANAGH and WILDER, JJ., concurred.