# STATE OF MICHIGAN

# COURT OF APPEALS

BROOKE KEEL,

       Plaintiff-Appellant,

v

TARA PALMER,

       Defendant-Appellee,

OAKLAND UNIVERSITY and OAKLAND
UNIVERSITY BOARD OF TRUSTEES,

       Defendants.

UNPUBLISHED
February 16, 2016

No. 324317
Court of Claims
LC No. 2013-000078-MZ

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

In this tort action against a governmental employee, plaintiff Brooke Keel appeals as of right the Court of Claims order granting summary disposition to defendant Tara Palmer under MCR 2.116(C)(7) based on Palmer's entitlement to immunity under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.* Because reasonable minds could not conclude that Palmer was grossly negligent or that her conduct was the proximate cause of Keel's injury, we affirm.

In 2010, Keel was a sophomore at Oakland University and a member of the school's cheerleading squad. Her coaches were Palmer and Palmer's assistant, Antonio Song. On June 15, 2010, at the second practice of the season, Keel injured her foot while she and three other members of the team attempted to perform a stunt known as a "full-up." According to descriptions in the lower court record, Keel participated in the stunt as a "flier," the team member on top of the stunt. Keel was hoisted into the air by her teammates with the intention that, while one teammate held her foot, Keel would complete a 360 turn in the air. The group failed to perform the stunt successfully, leading Keel to fall and injure her foot.

-1-

Keel later filed suit against Palmer, claiming that Palmer was grossly negligent in coaching the team and that Palmer's purported failings caused Keel's injury.[1] Palmer moved for summary disposition under MCR 2.116(C)(7), arguing that she was entitled to governmental immunity under MCL 691.1407(2) because her conduct had not been grossly negligent and she was not the proximate cause of Keel's injury. The Court of Claims granted Palmer's motion based on the conclusion that Palmer had not been grossly negligent. Keel now appeals as of right.

On appeal, Keel argues that the Court of Claims erred by granting summary disposition to Palmer because a question of fact remains with respect to whether Palmer may be considered grossly negligent and the proximate cause of Keel's injury within the meaning of MCL 691.1407(2). Specifically, Keel relies heavily on the testimony of her proposed expert, Kimberly Archie, for the proposition that Palmer's conduct constituted gross negligence because Palmer should have taken more precautions for the team's safety in keeping with the standards imposed by USA Gymnastics (USAG). Keel also contends that Palmer's failings left the team ill-prepared to perform the stunt in question and that, because Palmer was ultimately responsible for the team, her gross negligence could be considered the proximate cause of Keel's fall.

We review de novo a trial court's decision to grant a motion for summary disposition. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004). Likewise, questions of law, including the applicability of governmental immunity, are reviewed de novo. *Id.* When a plaintiff's claim is barred by governmental immunity, summary disposition is properly granted under MCR 2.116(C)(7). *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 382; 838 NW2d 720 (2013).

> In reviewing a motion under subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor. The Court must consider affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists. These materials are considered only to the extent that they are admissible in evidence. [*Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010) (internal citations omitted).]

Under the GTLA, individual governmental employees, including coaches of publically sponsored athletic teams, may be entitled to immunity under MCL 691.1407(2). See *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008); *Sherry v E Suburban Football League*, 292 Mich App 23, 29; 807 NW2d 859 (2011).[2] This provision states:

---

[1] Keel's complaint also named Oakland University and the Oakland University Board of Trustees as defendants. These defendants were dismissed with prejudice by stipulation, and they are not a party to this appeal.

[2] Keel argues on appeal that Michigan should recognize a cause of action for student-athletes injured by their coaches' negligence and that this cause of action should function as an exception to governmental immunity. In fact, Michigan recognizes a possible tort-based cause of action for

-2-

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . if all of the following are met:

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

In other words, MCL 691.1407(2) provides that, while in the course of employment, "an employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury." *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006). To be "the proximate cause" of injury within the meaning of MCL 691.1407(2), our Supreme Court has held that the employee's conduct must constitute "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 446; 613 NW2d 307 (2000). See also *Beals v Michigan*, 497 Mich 363, 371; 871 NW2d 5 (2015). Under this standard, "[i]t is not enough that the gross negligence be 'a' proximate cause, it must be the 'direct cause preceding the injury.'" *Kruger v White Lake Twp*, 250 Mich App 622, 627; 648 NW2d 660 (2002).

For purposes of MCL 691.1407(2), "gross negligence" is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Therefore, a plaintiff cannot survive a motion for summary disposition premised on immunity granted by MCL 691.1407(2) merely by presenting evidence that the employee's conduct amounted to ordinary negligence." *Radu*, 302 Mich App at 382-383. "Rather, the plaintiff must present evidence that the contested conduct was substantially more than negligent." *Id.* at 363 (quotation and citation marks omitted). Consequently, under this gross negligence standard, "[s]imply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).

---

student-athletes against coaches. See *Sherry*, 292 Mich App at 26-29. However, this is not an exception to governmental immunity; rather, coaches of publically sponsored athletic teams are governmental employees entitled to immunity under MCL 691.1407(2). See *Sherry*, 292 Mich App at 29. Moreover, it is not for us to craft an exception because the creation of exceptions to the broad grant of governmental immunity is a matter for the Legislature, not this Court. See generally *Jones v Bitner*, 300 Mich App 65, 76; 832 NW2d 426 (2013).

[S]aying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Id.*]

"The determination whether a governmental employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Oliver v Smith*, 269 Mich App 560, 563; 715 NW2d 314 (2006).

In this case, we conclude that the Court of Claims properly granted Palmer's motion for summary disposition under MCR 2.116(C)(7) because reasonable minds could not conclude that Palmer was grossly negligent, and thus Palmer is entitled to governmental immunity under MCL 691.1407(2). In particular, the undisputed facts in the lower court record plainly establish that Palmer undertook numerous precautions and safeguards to protect the cheerleaders on the team, and Palmer's demonstrated concern for the team's safety belies Keel's claim of gross negligence. We begin this analysis of Palmer's conduct by noting that the cheerleaders involved in the stunt were not novices. While there is some dispute regarding the exact skill level of each individual cheerleader, the undisputed facts show that all the team members in question had prior cheerleading experience, that tryouts were held to make the Oakland University team, and that incident to these tryouts Palmer required all team members to demonstrate a certain skill level to earn a spot on the collegiate cheerleading squad. Further, while there is dispute about the specifics of the conditioning engaged in by the team, the facts also show that the girls generally ran and stretched at practice, and that they were encouraged to take advantage of trainers and a weight room available to the team. In addition, there was a first aid kit brought to each practice, both Palmer and Song were certified by the American Association of Cheerleading Coaches and Administrators (AACCA), which is the certification required in Michigan for cheerleading coaches, and Palmer had the AACCA manual with her at practices. This evidence demonstrates that, generally speaking, Palmer made notable efforts to ensure the safety, training, and conditioning of the team.

More specifically, with regard to the day of Keel's injury, the full-up stunt at issue was demonstrated to the team by cheerleaders who had mastered the stunt the previous year. Further, Lisa Persichetti, a team captain and one of the cheerleaders who had mastered the stunt, was in Keel's group as the "main base." The stunt in question was practiced on the safety of mats spread across the gym floor. Both Palmer and Song were present and circulating among the groups to offer advice. According to Keel's description of events, Song in particular worked with Keel's group through the course of 8 or 9 attempts at the stunt and, when he walked away to work with another group, Palmer approached the group. Plainly, these undisputed facts show significant efforts at supervision and instruction as well as precautions taken to provide a safe environment for performing the stunt. Nothing in this conduct suggests that Palmer acted with

reckless disregard or that she showed a singular disregard for substantial risks. MCL 691.1407(8)(a). Instead, there were numerous precautions and safeguards in place that demonstrate Palmer's concern for the well-being of the cheerleaders, and thus reasonable minds could not conclude that Palmer's conduct amounted to gross negligence. Cf. *Tarlea,* 263 Mich App at 85, 90.

In contrast, Keel maintains on appeal that there are *additional* precautions that Palmer might have taken to prevent Keel's injury. For instance, rather than relying on the AACCA standards, Keel offers expert testimony for the proposition that Palmer should have followed the more demanding USAG standards for gymnastics because there were acrobatic elements to the stunt performed by the cheerleaders. Further, relying on Archie's testimony, Keel maintains, for example, that Palmer should have been spotting the stunt, that there could have been a safety harness for the flier, that a trainer should have been present, that there should have been *more* training and instruction for the team, that there should have been mandatory strength conditioning, that there should have been more formal assessment and documentation of the cheerleaders' progression of skills and their strength levels, that Palmer should have videotaped the team's practices, that there should have been more experienced cheerleaders in Keel's group, and that there should have been a more established team rapport among the members of the stunt group before they attempted the full-up as a unit. Accepting the contention that Palmer might have taken these additional precautions, simply alleging that Palmer could have done more does not establish that her conduct was grossly negligent "because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id.* at 90. In other words, while Palmer might have done more, it is nonetheless true that Palmer did employ numerous safeguards and precautions for the team during their practice of the full-up, and, given these efforts, reasonable minds could not conclude that Palmer's conduct amounted to gross negligence. See *id.* Moreover, it should be noted that much of Keel's argument is premised on the contention that Palmer should have adhered to USAG standards rather than AACCA protocols. But, by Archie's own admission, the "gold standards" set forth by the USAG have not been widely adopted by collegiate cheerleading teams, and it defies logic to suppose that Palmer could be considered *grossly* negligent for failing to adhere to a more stringent standard of care than that employed for collegiate cheerleading in Michigan. Overall, viewing the evidence in a light most favorable to Keel, this proposed list of extra precautions that might have been taken is insufficient to establish that a question of fact remains regarding gross negligence. Cf. *id.* at 90. Therefore, the Court of Claims properly granted summary disposition under MCR 2.116(C)(7).

In addition, although the Court of Claims did not address the question of proximate causation, we also conclude that Palmer's conduct cannot be considered the proximate cause of Keel's injury and thus summary disposition is also appropriate on this basis.[3] In particular,

---

[3] Because the question of proximate causation was not decided by the lower court, the issue is unpreserved and need not be considered. See *Hines v Volkswagen of Am, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005); *In re Gerald L Pollack Trust*, 309 Mich App 125, 153 n 8; 867 NW2d 884 (2015). However, the issue was raised in the Court of Claims, the parties have briefed the matter on appeal, and all the facts necessary for resolution of this issue appear in the

according to Keel's argument, Palmer should be deemed the proximate cause of the injury because Palmer was the coach and, as such, she had responsibility for training and supervising the team. Therefore, according to Keel, if the stunt failed it must have failed because Palmer failed to properly instruct and protect the team. However, even viewing the record in a light most favorable to Keel, Palmer's remote role in the series of events leading to Keel's injury cannot reasonably be seen as "the" proximate cause of Keel's injury.

That is, the causation evidence most favorable to Keel comes from Keel's deposition testimony and that of her expert witness, Archie. For example, regarding the cause of her injury, Keel described falling because of a "timing" issue, for which she seemed to blame the "left base." Keel described shifting her weight from her right to left foot while in the air, and she faulted the left base for not grabbing her foot at the appropriate time. According to Keel, the left base made this mistake repeatedly during practice. Considering Keel's description of events, it is plain that, even if Palmer's shortcomings as a coach contributed to an error by the left base, it is nonetheless true that the left base's actual failure to grab Keel's foot at the appropriate time constituted a more immediate and direct cause of the fall than any error by Palmer.[4] Thus, Palmer cannot be considered *the* proximate cause of Keel's injury. See *Reaume v Jefferson Middle Sch*, 477 Mich 1109; 729 NW2d 840 (2007); *Miller v Lord*, 262 Mich App 640, 642; 686 NW2d 800 (2004); *Kruger,* 250 Mich App at 627.

Moreover, in comparison to Keel's testimony, Archie could not pinpoint a precise error in the stunt that led to Keel's fall. Nonetheless, she opined generally that there was a "timing" issue and that it was likely that everyone in Keel's group "made mistakes." According to Archie, "four people who are involved" and there's no way to "separate" their conduct, meaning that "there's no way to put it on one person." Indeed, more generally, Archie explained: "[m]ost times, you don't see injuries because one factor goes array. Injuries occur because you have a list of things that went wrong that day." And, she fully conceded that there is "always" risk when learning a stunt and that even experienced, well-trained groups have accidents. On this record, given Archie's inability to pinpoint the precise error which led to the fall and her recognition that even well-trained groups have accidents, it is mere speculation to suppose that an error occurred because of Palmer's conduct or that different conduct by Palmer could have prevented the fall. This type of speculation as to Palmer's remote role in the chain of events is not sufficient to establish Palmer as the proximate cause of injury. Cf. *Beals*, 497 Mich at 374 (recognizing that speculation as to the impact of employee's conduct did not establish his conduct as the proximate cause of a drowning death). See also *LaMeau v Royal Oak,* 490 Mich 949; 805 NW2d 841 (2011). Indeed, it appears from Archie's testimony that all the cheerleaders may have made mistakes, but that the precise error which caused the fall is unknown. While the precise error which caused the fall is unknown, the fact remains that Palmer was not directly involved in the performance of the stunt and thus the unknown error by one or all of the

lower court record. Given these circumstances, we find it appropriate to exercise our discretion to decide this unpreserved issue. See *Hines*, 265 Mich App at 443.

[4] We note as well that, to the extent Keel offered evidence to support her contention that Palmer acted callously after Keel's injury by laughing, even assuming this demonstrates gross negligence on Palmer's part, laughter after the fall occurred cannot feasibly be considered "the proximate cause" of Keel's injury.

cheerleaders was a more direct cause of Keel's injuries than any purported failing by Palmer. See *Beals*, 497 Mich at 366 ("That the reason for the [plaintiff's death] is unknown does not make that unidentified reason any less the proximate cause of his death."). In these circumstances, viewed in a light most favorable to Keel, reasonable minds could not conclude that Palmer was *the* proximate cause of Keel's injuries.

In sum, reasonable minds could not conclude that Palmer was grossly negligent or that she was the proximate cause of Keel's injury. Thus, Palmer was entitled to governmental immunity under MCL 691.1407(2) and the Court of Claims properly granted her motion for summary disposition under MCR 2.116(C)(7).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly