*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH MASTRACCI, Personal Representative for
the ESTATE OF CRAIG MASTRACCI,

        Plaintiff-Appellant,

v

L5 FITNESS HOLDINGS LLC, L5 FITNESS
MICHIGAN LLC, doing business as
ORANGETHEORY FITNESS, OT MICHIGAN
PARTNERSHIP, ANNA SHAHINIAN, and TESS
HOCHSTEIN,

        Defendants-Appellees.

UNPUBLISHED
October 21, 2024
11:51 AM

No. 365207
Wayne Circuit Court
LC No. 21-014049-NO

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Plaintiff, as the personal representative of the Estate of Craig Mastracci, appeals as of right the trial court's order granting defendants, L5 Fitness Holdings, LLC, L5 Fitness Michigan, LLC, doing business as Orangetheory Fitness, OT Michigan Partnership, LLC, Anna Shahinian, and Tess Hochstein's motion for summary disposition pursuant to 2.116(C)(10). We affirm.

## I. FACTS

On February 6, 2021, plaintiff's decedent, Craig Mastracci, suffered a fatal heart attack after he left the Detroit Orangetheory Fitness (OTF) studio. Mastracci was a member at OTF. When he arrived for class, Mastracci informed the instructor, defendant Shahinian, that he was going to "take it easy" because he had a torn calf muscle. About 10 minutes before class ended, Mastracci left the studio to sit on a bench in the lobby because he could not catch his breath. The OTF employees asked Mastracci how he felt, if he needed any assistance, or if he wanted one of the employees to call someone for him. After refusing all offers of assistance, Mastracci told Hochstein, the studio manager, that he was going to drive to Henry Ford Hospital, which was only a few blocks from OTF. Hochstein walked Mastracci to his car. The next week Hochstein learned

that after he left OTF, Mastracci had been found unresponsive in his car in front of Henry Ford Hospital and that he died in the emergency department.

Plaintiff filed a complaint claiming negligence, gross negligence, and wrongful death. The trial court granted defendants' motion for summary disposition finding that the waiver that Mastracci signed waived any claims of negligence and that plaintiff failed to establish gross negligence. Plaintiff now appeals, arguing that the trial court erred by granting defendants' motion for summary disposition because defendants failed to establish that Mastracci signed the waiver, that the events underlying plaintiff's claims were not within the scope of the waiver, the waiver was unconscionable and could not be enforced, and that plaintiff established a genuine issue of material fact that defendants were grossly negligent.

## II.  STANDARD OF REVIEW

This Court reviews the existence and interpretation of a contract de novo as questions of law. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court reviews a motion for summary disposition de novo. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015). Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), citing MCR 2.116(G)(4). A court reviewing a motion under MCR 2.116(C)(10) must consider the substantively admissible evidence offered in opposition to the motion. *Maiden*, 461 Mich at 121. To survive summary disposition, the opposing party must set forth specific facts establishing a genuine issue of material fact for trial. *Id*. at 120. A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 540; 965 NW2d 121 (2020) (quotation marks and citation omitted).

## III.  WAIVER OF LIABILITY

Plaintiff first argues that defendants failed to establish that Mastracci signed the waiver of liability. We disagree.

The waiver of liability provides:

**Assumption of Risk, Release, Waiver of Liability, and Indemnification**: We urge you and all clients to obtain a physical examination from a physician prior to initiating any exercise program. Orangetheory® Fitness ("OTF") classes are not designed for individuals with known heart disease with or without functional impairment. You understand and agree that there is a risk of injury associated with participation in any exercise program and that there exists the possibility for certain

-2-

conditions occurring during or following training and/or exercise. In recognition of the possible dangers connected with any physical activity, by signing below, you understand, acknowledge, agree, and hereby voluntarily accept all risk and responsibility associated with the services provided and use of any of the facilities at any OTF studio. You acknowledge that it is your responsibility to disclose any medical condition or medication that could limit or prevent you from performing physical activity. You acknowledge that we may require you to provide written physician approval before you may use or participate in any physical activity at the Studio. You acknowledge that you may decrease or stop at any time any physical activity you perform at the Studio and that it is your obligation to inform the Studio's staff of any medical symptoms or issue that arise while at the Studio. You hereby waive all claims, assume all liability, and release, hold harmless, indemnify, and agree to defend us, Ultimate Fitness Group, LLC, the franchisor of OTF and the entity who granted us contractual authority to independently own and operate our franchised location ("UFG"), the UFG Parties (defined below), any other OTF studio, any owner of any other OTF studio you may visit, and any of our or their respective affiliates, successors, assigns, agents, representatives, and employees, from liability for any injury, claim, cause of action, suit, demand, and damages (including, without limitation, personal, bodily, or mental injury, property damage, economic loss, consequential damages, and punitive damages), arising from or related to (1) your failure to disclose any pre-existing conditions, limitations, or sensitivities; (2) your presence on the premises of any OTF studio; (3) your participation in any OTF class or use of any equipment at any OTF studio; and/or (4) any negligence on our part (including our employees) or on the part of any employee of any other OTF studio. You further expressly agree that this Assumption of Risk, Release, Waiver of Liability, and Indemnification is intended to be as broad and inclusive as permitted by law…. You expressly agree that if any portion of this Assumption of Risk, Release, Waiver of Liability, Indemnification is held invalid, the balance shall be valid and continue in full legal force and effect. These provisions are binding on you, your estate, family, heirs, administrators, personal representatives, and assigns.

Below this language is a signature bearing the name "Craig Mastracci," dated November 7, 2019. It is also countersigned by an OTF staff member whose signature is illegible.

Evidence offered in support of a motion for summary disposition pursuant to MCR 2.116(C)(10) may only be considered to the extent that the content or substance would be admissible as evidence. *Barnard Mfg Co Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Although the evidence must be substantively admissible, it does not have to be in admissible form to be considered. *Id*. Therefore, the question is whether Mastracci's signature would be admissible at trial with a proper foundation.

MRE 901 provides examples to satisfy the requirement of authenticating or identifying an item of evidence.[1] A nonexpert could testify regarding his or her opinion whether the handwriting was genuine based on a familiarity with it. MRE 901(b)(2). In addition, an expert witness or the trier of fact could compare a signature offered as evidence with an authenticated specimen. MRE 901(b)(3).

Mastracci's signature need not be in admissible form to be considered at the summary disposition stage. See *Barnard Mfg Co Inc*, 285 Mich App at 373. At trial, defendants could use any of the methods in MRE 901 to authenticate Mastracci's signature. But to survive summary disposition, plaintiff must set forth specific facts establishing a genuine issue of material fact for trial. *Maiden*, 461 Mich at 120. Plaintiff has failed to set forth specific facts demonstrating that Mastracci did not sign the waiver. As such, plaintiff failed to establish a genuine issue of material fact regarding Mastracci's signature.

Plaintiff also argues that the language of the contract was ambiguous because the waiver imposed a duty upon the member to inform OTF of any medical issues or symptoms resulting from the workout. Plaintiff asserts that this language could have led the members who signed the release to believe that defendants would aid and assist them if they faced a medical emergency. Therefore, plaintiff argues, when members signed the release, they did not believe that they were waiving liability regarding defendants' failure to offer them medical assistance.

Contract law governs disputes involving the terms of a release. *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013). The scope of a release is governed by the intent of the parties as it is expressed in the release. *Id*. If contractual language is clear and unambiguous, interpretation of the contract is a question of law for the court. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). The parties' unambiguous intent must be ascertained from the plain, ordinary meaning of the contract. *Radu*, 302 Mich App at 374. A contract is ambiguous when its words or clauses may be reasonably understood in different ways, *Alpha Capital Mgt*, 287 Mich App at 611, or when two provisions in the contract "irreconcilably conflict with each other," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). But "[i]f contractual language is unambiguous and no reasonable person could differ concerning the application of the term or phrase to undisputed material facts, summary disposition should be awarded to the proper party." *Id*. at 612.

The waiver that Mastracci signed provided four separate instances for which Mastracci waived defendants' liability. The waiver provides that Mastracci waived liability:

> arising from or related to (1) your failure to disclose any pre-existing conditions, limitations, or sensitivities; (2) your presence on the premises of any OTF studio; (3) your participation in any OTF class or use of any equipment at any OTF studio;

---

[1] The Supreme Court enacted a substantial set of stylistic amendments to the Michigan Rules of Evidence effective January 1, 2024. Because the pertinent proceedings took place before these amendments, we use the preamendment rules in this opinion.

and/or (4) any negligence on our part (including our employees) or on the part of any employee of any other OTF studio . . . .

Plaintiff argues that his claims fall outside the scope of the waiver because he did not allege that Mastracci was injured by his participation in the class or use of the equipment. Plaintiff correctly states that the waiver applies to any claims arising from an OTF member's participation in an OTF class or use of the equipment in the OTF studio. However, plaintiff's argument ignores the other language in the waiver. The waiver also unambiguously waives any claims arising from a member's presence on OTF property and *any negligence on OTF's or its employees' part.* Plaintiff's claims clearly arise from the actions or inaction of the OTF employees while Mastracci was on OTF property. Plaintiff claimed that defendants, which include certain OTF employees, failed to act in a reasonable manner to avoid conduct that created or increased the likelihood that Mastracci would suffer injury or death. This claim was clearly waived by the unambiguous language of the waiver.

Plaintiff also alleges that defendants failed to follow their own policies when they failed to immediately contact emergency services. However, "a defendant's violation of its own internal rule, even if the rule is designed to protect the public, does not constitute negligence per se." *Meyers v Rieck*, 509 Mich 460, 473; 983 NW2d 747 (2022). Therefore, an allegation that defendants breached their own internal rule, without more, does not establish a claim for negligence. *Id.*

Next, plaintiff argues that the language in the contract urging members to obtain a physical examination before beginning the exercise program and requiring members to inform OTF staff if they experienced any medical symptoms or issues while at the OTF studio, conflicts with the language of the waiver. Plaintiff contends that this language led members to believe that OTF staff would offer assistance if the members encountered emergencies. Plaintiff claims that such an offer of assistance and concerns with members' health conflicts with language of the waiver and allowed members to believe that they would receive assistance from OTF staff.

If two provisions in a contract "irreconcilably conflict with each other, the language of the contract is ambiguous." *Klapp*, 468 Mich at 467. The beginning of the paragraph addressing medical issues stresses the strenuous nature of the OTF classes and explains the risk of injury related to the strenuous nature of the classes. The waiver further states that the classes were not designed for individuals with a history of heart disease. In addition, the language instructs that it was the members' responsibility to inform OTF of any medical restrictions or any injuries they sustained while at OTF. Plaintiff argues that the contract is ambiguous because it allowed members to believe that OTF would assist them in a medical emergency. However, the language of the waiver does not conflict with an expectation of assistance, nor does it prohibit OTF staff from offering assistance in the event of an emergency. Rather, the waiver releases defendants from any negligence that might arise in the event that they did not offer assistance. That is not the case here; two different OTF employees offered plaintiff assistance.

In *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994), the plaintiff filed a claim after her decedent suffered a fatal heart attack in the steam room at the defendant's fitness club. The plaintiff alleged that the defendant was negligent in failing to ensure that its staff was trained to respond to cardiac emergencies by administering CPR. *Id*. at 617. The

decedent had signed a release that released "any and all claims . . . resulting from or arising out of the Member's or his guests [sic] use or intended use of said gymnasiums or the facilities and equipment thereof." *Id*. at 618-619. The plaintiff argued that the contract released the defendant from liability for slip and fall injuries or injuries sustained while using the equipment, but that it did not extend to negligent training and supervision of employees. *Id*. This Court held that the release was unambiguous and clearly expressed the defendant's intention to disclaim liability for all negligence, including claims of negligent training or supervision of employees. *Id*. at 619. "[T]here is no broader classification than the word 'all.' In its ordinary and natural meaning, the word 'all' leaves no room for exceptions." *Id*.

In this case, the language of the contract provides that the signing members "waive all claims, assume all responsibility, release and hold harmless" OTF and employees "from liability for any injury, claim, cause of action, suit, demand and damages . . . ." This language clearly and unambiguously expressed defendants' intent to disclaim liability for "any" and "all" negligence. Defendants' use of the word "all" left no room for exceptions. *Skotak*, 203 Mich App at 619. Thus, even if we assume defendant OTF was negligent in failing to adequately train its employees, any claim arising out of that negligence would be barred by the release. See *id*.

Plaintiff also argues that if this Court finds that the contract was unambiguous, it should further find that the contract was unconscionable and should not be enforced. This Court has set forth the principles that guide whether a contract is unconscionable:

> In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience. [*Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 217; 926 NW2d 856 (2018) (citation omitted).]

In support of his claim of procedural unconscionability, plaintiff failed to present any evidence that Mastracci had no realistic alternative to joining a fitness club or that he was unable to join some other fitness club. Therefore, plaintiff failed to establish a question of fact that Mastracci was not free to accept or reject the term. *Lebenbom*, 326 Mich App at 217. See also *Clark v Daimler Chrysler Corp*, 268 Mich App 138, 144; 706 NW2d 471 (2005); *Liparoto Const, Inc v General Shale Brick, Inc*, 284 Mich App 25, 31; 772 NW2d 801 (2009). In addition, it is not against public policy for a party to limit its liability for its own negligence in all circumstances. *Skotak*, 203 Mich App at 617-618. Nothing in the waiver was so unreasonable or extreme as to shock the conscience. *Clark*, 268 Mich App at 144. Indeed, the waiver at issue in this case is fairly typical of waivers seen in a wide array of industries and activities. Plaintiff failed to establish that the waiver of liability was either substantively or procedurally unconscionable.

We find that the waiver was valid, enforceable, and waived plaintiff's claim of negligence. Accordingly, the trial court properly granted defendants' motion for summary disposition.

## IV. GROSS NEGLIGENCE

Plaintiff argues that defendants showed a substantial lack of concern for whether Mastracci suffered injury, and therefore, the trial court erred by granting defendant summary disposition of plaintiff's gross negligence claim. We disagree.

A contractual waiver of liability insulates against ordinary negligence, but not gross negligence. *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury result[ed]" to decedent. *Id*. In other words, "if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Further, the mere allegation that an actor "could have done more" is insufficient to establish a gross negligence claim. *Id*.

Plaintiff claims that defendants' failure to act amounted to gross negligence. Defendant Shahinian testified that when Mastracci left the studio, she assumed it was because of the calf tear he spoke about at the beginning of class. Shahinian left the studio while the class was cooling down to ask Mastracci how he felt. Mastracci informed her that he was having trouble breathing. Shahinian testified that it was not unusual for OTF members to tell her they were having a hard time breathing while wearing their masks. Shahinian told Mastracci to remove his mask, open up his lungs, and take a moment. When the class was finished, Shahinian checked in with Mastracci again. At that time, another member, Ellen Hedley, approached Mastracci. After Hedley spoke with Mastracci, she informed the OTF staff members that she did not think he was doing very well. Shahinian did not notice anything alarming about Mastracci's heart rate and observed that Mastracci's heart rate had slowed to a resting heart rate.

Another OTF employee, Khulud Fidama, checked on Mastracci and offered him a glucose tablet and water, which Mastracci refused. Mastracci informed Fidama that he was fine, but that he was a little short of breath and needed to rest for a minute. Hochstein witnessed Fidama, Hedley, and Shahinian approach Mastracci. Hochstein was present when Hedley informed them that Mastracci was not feeling well, but did not want any help. Hochstein testified that she knew Hedley worked at Henry Ford Hospital. Hochstein thought that Hedley was a nurse and trusted her opinion when Hedley said that Mastracci did not want any help. When Hochstein approached Mastracci, he told her that he was lightheaded. When Hochstein asked if Mastracci wanted her to call someone, such as his emergency contact, he refused. When Mastracci told Hochstein that his phone was in his car, Hochstein offered to retrieve his phone from the car, but Mastracci refused. Hedley had also offered the use of her phone to Mastracci to call his daughter, which he refused.

After several minutes of Hochstein questioning Mastracci, he told Hochstein that he was going to drive to Henry Ford Hospital because it was only a few blocks away. Hochstein asked Mastracci if he was sure that he wanted to drive and offered to call someone to drive him. Mastracci insisted that he was able to drive himself. Hochstein walked Mastracci to his car and

watched him get into it. Hochstein went outside about 10 minutes later to check if Mastracci was still there, but his car was gone.

It is clear from these actions that the OTF employees showed concern for Mastracci. An objective observer watching the OTF employees could not reasonably conclude that they simply did not care about Mastracci's safety or welfare. *Tarlea*, 263 Mich App at 90. Each of the employees approached Mastracci to determine if he needed assistance. Hochstein offered to help him call someone. Hochstein asked him if he was sure he wanted to drive or if he needed someone to drive him. A reasonable person could not conclude that defendants showed "a substantial lack of concern" for Mastracci's well-being. *Id*.

While plaintiff asserts that defendants knew Mastracci was experiencing symptoms of an impending heart attack, defendants were only aware that Mastracci was having trouble breathing and was lightheaded. In Shahinian's experience, these were symptoms that members sometimes experienced after an OTF class. While Hedley later submitted a statement relating that Mastracci had informed her that he was having tightness in his chest and that his heart rate was abnormally high, Hedley did not relay these symptoms to the OTF employees at the time. Hochstein and Shahinian both checked the monitors for Mastracci's heart rate and noted that it was a resting heart rate. Considering the evidence presented, a reasonable trier of fact could not conclude that defendants displayed conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted. *Tarlea*, at 92. The trial court properly granted defendants' motion for summary disposition as to plaintiff's claim of gross negligence.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado